O

## ADAMS *et al. v.* THE STATE.

Where the body of a man apparently murdered was found by the roadside, and two persons were arrested and placed in jail charged with the murder, and were subsequently taken thence in custody before the coroner's jury summoned to hold an inquest on the body, and, without being informed that they were not compelled to testify, were sworn and examined as witnesses, not on their motion but on that of the coroner or the jury, in regard to the homicide and their connection with it, on a subsequent trial under an indictment charging them with murder, confessions or inculpatory statements elicited on their examination before the coroner's jury were not admissible against them.

Argued July 15,—Decided August 13, 1907.

Indictment for murder. Before Judge Edwards. Haralson superior court. June 15, 1907.

*Griffith & Matthews,* for plaintiffs in error. *John C. Hart,* attorney-general, and *W. K. Fielder,* solicitor-general, contra.

LUMPKIN, J. B. G. Adams and Hillard Lee were jointly indicted for the murder of Reece Jones. They were found guilty,

.and sentenced to life imprisonment. They made a motion for a new trial, which was overruled, and they excepted. The motion contained, besides the general grounds, numerous others which were added by amendment. Most of these require no discussion further than to say that they are without merit. As to others, if there were some slight inaccuracies of expression in detached portions of the charge, when taken in connection with the entire charge, they will scarcely require a new trial. In one part of the charge the presiding judge used the expression, "Yet if the evidence was not strong enough to exclude every reasonable hypothesis of murder or the claim of murder," etc. In a case depending upon circumstantial evidence it is every other reasonable hypothesis save that of the guilt of the accused which must be excluded, not "every reasonable hypothesis of murder or the claim of murder." Such an inadvertence in expression will doubtless not occur again.

One ground of the motion for a new trial requires a reversal. It appears that the body of the deceased was found beside the public road, and evidence of a circumstantial character was introduced to show that he was killed by the defendant. After the body was found, an inquest was held. The defendants had been arrested and placed in jail, charged with the murder of the deceased. They were taken from jail in custody of the sheriff and sworn and examined as witnesses before the coroner's jury. They were not informed that they were not compelled to testify, and were examined after all parties had been excluded from the room where the inquest was being held. On their trial in the superior court under the indictment, two members of the coroner's jury were allowed, over objection, to testify to what the defendants had sworn as witnesses at the inquest, including certain inculpatory statements. The ruling just stated was erroneous. The Penal Code, §1006, declares that, "To make a confession admissible, it must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury." Among the powers of a coroner's jury is that of declaring whether the person upon whose body the inquest is held came to his death by murder; and if so, who were the principals and who were the accessories. Penal Code, §1262. If the inquest discloses facts which lead or may lead to the prosecution of any

person for the homicide, the coroner shall issue a warrant for the arrest of the person suspected of the homicide, returnable as other warrants. Penal Code, §1264. "In all criminal trials, the prisoner shall have the right to make to the court and jury such statement in the casê as he may deem proper in his defense. It shall not be under oath, and shall have such force only as the jury may think right to give it." Penal Code, §1010. In a court of inquiry the defendant is permitted to make his own statement of the transaction, not under oath, if he desires so to do. Penal Code, §910. The spirit of the law is that one accused of crime shall not be required to be put under oath, and thus to be placed in the dilemma of either being required to testify as a witness against himself, or being subject to the penalties of false swearing. His right to speak, not under oath, is a statutory privilege, and it is not lawful to require him to be sworn as a witness against himself. Where a coroner's jury has been summoned to hold an inquest over the body of a deceased person who appears to have been murdered, and another has been arrested and is held in custody, accused of the crime, he is not formally upon trial, but substantially he is so, and the crime for which he has been arrested, as well as his connection with it, is the subject of investigation. For the coroner, or other officer representing the State, to bring him forward as a witness under such circumstances, require him to be sworn, and demand of him under oath to testify as to his own guilt or innocence, is in violation of the spirit, if not the letter of the statute. If he should decline to be sworn at all, or to answer questions, he must know that the effect would be disastrous to him. It is not a case where one may lawfully be called as a witness generally, but where, if certain questions are put to him, he may claim his privilege. It is a case where the accused ought not to be sworn at all. It may be that there is nothing in the fact of an arrest alone which will make a voluntary confession of a party under arrest inadmissible; or if one voluntarily makes a confession or inculpatory statement before a magistrate, this alone may not render it inadmissible; or, as suggested above, where it is lawful to swear a person as a witness, so that the general examination of him is proper, but if the witness is asked certain questions he may claim his privilege, the administration of an oath may not alone render a confession voluntarily made

inadmissible on a subsequent trial. But we think there can be no doubt that, where it is unlawful to require the accused to be sworn as a witness, to do so, and to draw out of him, by questions, confessions or inculpatory statements under oath, is improper; and such statements are not admissible against him, if he is subsequently tried for the offense involved.

In *Cicero* v. *State,* 54 *Ga.* 156, it was said: "A magistrate has no right to examine a defendant for the purpose of obtaining from him contradictory statements." Before a confession is admissible in evidence, it must appear prima facie that it was freely, and voluntarily made. If the contrary appears, it is inadmissible. If the evidence for the State makes out a prima facie case for the admission of such a confession, the court is not bound, before admitting it, to hear evidence on behalf of the accused, tending to show coercion or improper inducement in its procurement. If the evidence for the State shows the confession to be admissible, it will be admitted. If the defendant desires to introduce evidence to show that there was improper inducement which caused the confession to be made, he can do so, and it will then be for the jury to determine, under all the evidence, whether or not the confession was free and voluntary. *Irby* v. *State,* 95 *Ga.* 467; *Dawson* v. *State,* 59 *Ga.* 333; *Smith* v. *State,* 88 *Ga.* 627. As to inculpatory statements, or even statements seeking to place the crime upon another, see *Fuller* v. *State,* 109 *Ga.* 809.

In *Inman* v. *State,* 72 *Ga.* 269, no question was raised as to the admissibility of evidence, but exception was taken to a charge of the court as to the credit to be given to sworn statements of a person as a witness before a coroner's jury, when subsequently introduced in evidence (apparently without objection) on his trial for murder. Counsel for the State in the present case relied on the case of *Woolfolk* v. *State,* 81 *Ga.* 551, (6), 562. It will be observed that there the court dealt with two matters together: first, that testimony was allowed in relation to the coroner's requiring the defendant, during the progress of the inquest, to remove his clothing, whereby certain blood-stains were disclosed on his person; and second, certain statements of the defendant which were made during the investigation. The first point was the one principally considered. In regard to the second point it was stated in the opinion (p. 562) that, "So far as

this record discloses, the statements made by the defendant were
perfectly voluntary and not under oath." This distinguishes the
*Woolfolk* case from that now under consideration. In *Green* v.
*State,* 124 *Ga.* 344, it was held that the objection to showing
the statement which the defendant had made at the coroner's
inquest was without merit, where the record did not disclose any
evidence of compulsion, or that the statement proved by such
testimony was not freely and voluntarily made. In the opinion
(p. 346) it was stated that "There was no error in admitting the
testimony complained of in the first ground of the amendment to
the motion for a new trial, it not appearing from the record that
the accused was under oath when she made her statement during
the coroner's inquest." A sentence in the opinion should perhaps
be mentioned, lest it might be subject to be misunderstood here-
after. It was said, that, "As it does not appear from the record
in the case at bar that the incriminating statement of the accused
was not voluntarily made, and the burden being upon her to show
such fact, if it was a fact (*Eberhart* v. *State,* 47 *Ga.* 599), her
failure so to do renders her objection to the testimony without
merit." It was not intended by this to conflict with the rulings
in *Irby* v. *State* and *Dawson* v. *State,* supra. In the *Eberhart*
case one ground of the motion for a new trial was, because the
court erred in allowing the confessions of the defendant and of
one Spann to go to the jury without a preliminary examination,
and without proof that they were freely and voluntarily made.
In a note to this ground the court stated, that, during the exam-
ination of the same witness on the trial of Spann, on the preced-
ing day, in regard to the same confessions, he had thoroughly ex-
amined the witnesses as to the character of such confessions, and
had fully satisfied himself that they were freely and voluntarily
made, without the slightest hope of benefit or the remotest fear
of injury; that during the trial of the prisoner, no objection was
made by counsel on this ground, and the attention of the court
was not called to the fact. In the opinion the failure to object
was emphasized. It was said that "We incline to think that, if
objected to, it would have been the duty of the State to show the
circumstances under which they were made, that the court might
see if they were voluntary. . . If they are given in and not
objected to, it is too late after verdict to say that there was not

a sufficient inquiry into the circumstances." The language of the seventh headnote is too broad, standing alone. It must be construed in the light of the question before the court.

In many cases it has been held, where a person under arrest accused of a crime connected with the death of the person on whose body the inquest is held is called as a witness before the jury, not of his own motion or volition, that sworn confessions so obtained are not considered voluntary, and can not be used against the witness in a subsequent prosecution of him. Different courts have assigned different reasons for this exclusion, and have advanced different theories on the subject. Some have based it upon the letter or spirit of statutes. Others, without regard to statutes, have declared that confessions so obtained are not voluntary. In Wharton's Crim. Ev. (9th ed.) §664, after stating that a confession, though made under oath, if not procured or induced by compulsion or undue influence, is admissible, it is added, "And as we will presently see, when the defendant is in custody under charge of crime, and is then sworn and questioned by the examining magistrate, his answers thus compelled can not afterwards be put in evidence against him." In section 668 it is said, "But the testimony of the accused party, taken as such, is not admissible, when such accused party is put on his oath and sworn, and examined, not on his own motion, but on the motion of the prosecution. This rule is founded upon the unreliable as well as the inquisitorial character of such statements; and therefore where a man, having been arrested by a constable, without a warrant, upon suspicion of having committed murder, was compelled to answer under oath as a witness at the coroner's inquest, it was held that the statements thus made by him were not admissible against him on his trial for the murder. The same rule obtains where the defendant is compelled to answer under oath questions by the committing magistrate." See also 1 Greenleaf on Ev. §225. An elaborate discussion of the subject and of leading cases on both sides will be found in 1 Wigmore on Ev. §§842-852, and note to §852. See also 1 Bish. Crim. Proc. (4th ed.) §§1255, 1256. In Hendrickson v. People, 10 N. Y. 13, it was held, that, on a trial for murder, statements made by a person as a witness at a coroner's inquest upon the body of the deceased, before the witness had been charged with the murder and before it was

ascertained that a murder had been committed, were admissible in evidence against him. Selden and Allen, JJ., dissented. In the opinion numerous cases were discussed. In People v. McMahon, 15 N. Y. 384, the prisoner had been arrested by a constable, without a warrant, on suspicion of being the murderer of his wife. The constable took him before the coroner who was holding an inquest on the body of the murdered woman. The coroner swore him and examined him as a witness. It was held that his evidence thus given before the coroner was not admissible on the prisoner's trial for the murder. The opinion was prepared by Selden, J., who had formerly filed a dissenting opinion in the Hendrickson case. It was learned and interesting, but much that was said extended beyond the ruling actually made, and it has given rise to no little discussion since. In Teachout v. People, 41 N. Y. 7, the two preceding cases were considered, and it was held that "Statements made by the prisoner, under oath, at a coroner's inquest upon the body, are admissible against him upon his trial for the murder, although he knew, at the time he was sworn, that it was suspected the deceased was poisoned, and that he himself would probably be arrested for the crime, and was informed by the coroner that rumors implicated him, and that he had a right to refuse to testify." A distinction was made between one who was merely suspected of the crime and one who had been arrested and stood before the coroner's jury as substantially a party charged with the crime, and who was subjected to examination on oath. In People v. Mondon, 103 N. Y. 211, this distinction was again recognized. In People v. Chapleau, 121 N. Y. 266, the person who had been arrested, charged with the crime of murder, desired to go before the coroner's jury and make a statement, and, after being duly informed that his depositions might be used against him, elected to be sworn, and asked to be allowed to testify. It was held, that, under the then existing statute, his statement was admissible in evidence against him on a subsequent trial for murder. In that case the preceding rulings were treated as harmonious, which has called forth from Professor Wigmore a somewhat satirical comment.    1 Wig. Ev. §852, note 1, supra. See also Wilson v. State, 110 Ala. 1, 55 Am. St. R. 17; State v. Clifford, 86 Iowa, 550 (41 Am. St. 518, and note); Farkas v.

State, 60 Miss. 847; State v. O'Brien, 18 Mon. 1; State v. Brough-ton, 7 Ired. 96.

The case of *Davis* v. *State,* 122 *Ga.* 564, is readily distinguish-able from the one at bar. There, on an investigation before a grand jury, founded on an indictment against certain parties, another person was examined as a witness. Apparently there was some suspicion of his being connected with the crime, but in the report it does not appear that he was under arrest. He was warned of his privilege not to testify to anything tending to criminate him. He nevertheless voluntarily answered a question. It was held admissible, when he was afterwards indicted and tried, to prove what he said and his manner while testifying.

If there were any irregularities in regard to one of the jurors, or in regard to certain expressions in the charge, as claimed, they will probably not occur again.

<em>Judgment reversed. All the Justices concur.</em>