## INCRIMINATING TESTIMONY BEFORE A GRAND JURY.

Common Pleas Court of Hamilton County.

THE STATE OF OHIO v. GEORGE B. COX; TWO CASES.

Decided, May, 1911.

*Criminal Law—Rights of One Under Examination as to a Criminal Act
—Privilege Against Self-Incrimination—Intent to Become a Volun-
teer Witness Before a Grand Jury Must Be Clear—Scope of Motions
to Quash—Election as Between Indictments—Section 13621.*

1. When one is subpoenaed to appear as a witness before a tribunal
   created by law and that one is under investigation as to a criminal
   act alleged to have been committed by him, nothing said by him
   then and there can be the predicate of any indictment against him,
   unless he volunteer to become such a witness with a full knowl-
   edge of the possible or probable results to him. The intent to
   thus become a volunteer must be clear, definite and certain. Article
   I, Section 10, of the Constitution does not mean he can not be asked
   self-incriminating questions, nor does it mean he must claim a
   privilege against self-incrimination. Such a witness under such
   circumstances is exempt from becoming a witness at all.

2. The statutory definition of a motion to quash not only includes de-
   fect in form or manner of stating a crime in the indictment, but
   also the substance of the crime therein, and this is true notwith-
   standing that the same defect in substance may be reached by de-
   murrer to the indictment. The accused not only thus has the
   choice of two remedies, but may use both, each in turn if necessary.

3. When one, who has been indicted two or more times for the same
   criminal act, moves for an election and also to quash all the in-
   dictments against him, he may abandon temporarily or permanently
   his motion to elect and press the motions to quash. An accused has
   the right at all times before demurring or pleading in bar or the
   general issue, to destroy, if possible, all the indictments against
   him by motions to quash and pleas in abatement, and thus pre-
   vent the necessity of an election by the state; and when such an one
   has thus abandoned his motion to elect, the state has not the right
   to exercise its election under that motion without the consent of the
   accused, and especially is this so when the purpose of the state is
   to reserve one of the indictments for future use in the event the
   first be set aside by the court,

*Henry T. Hunt* and *Coleman Avery,* for the state.

*Lawrence Maxwell, Charles W. Baker, Darby & Benedict* and *Joseph S. Graydon,* contra.

DICKSON, J.

The records in these cases disclose two indictments against the accused. Each undertakes to charge him with perjury before the grand jury of Hamilton county, Ohio, on March 21st, 1906. The indictments are the same, except the immaterial word "lawfully," in brackets, and are as follows:

"Indictment. The State of Ohio, Hamilton County. The Court of Common Pleas of Hamilton County. Term of January in the year nineteen hundred and eleven. Hamilton county, ss

"The grand jurors of the county of Hamilton, in the name and by the authority of the state of Ohio, upon their oaths present that at a separate session of the court of common pleas of the first judicial district of the state of Ohio within and for the county of Hamilton, for the term of January in the year nineteen hundred and six, begun and holden in the city of Cincinnati, county and state aforesaid, on the first Monday, the first day of January, in the year nineteen hundred and six, before the Honorable William Littleford, judge of said court, a grand jury for said county, for said term of said court, was then and there duly impannéled, sworn and charged, and then and there proceeded to inquire of offenses committed within the limits of the county aforesaid; that on or about said day and during said term Charles Weidner, Jr., was then and there the duly elected, qualified and acting clerk of said court of common pleas of said Hamilton county, and John Byrne was then and there a duly appointed, qualified and acting deputy of said Charles Weidner, Jr., clerk of said court of common pleas as aforesaid; that said Charles Weidner, Jr., as clerk as aforesaid and by John Byrne, his deputy as aforesaid, was then and there duly authorized and required by law to administer to each and every witness examined by said grand jury an oath truly to testify of such matters and things as might be [lawfully] inquired of before said grand jury; that on or about the 21st day of March in the year nineteen hundred and six George B. Cox was then and there subpoenaed to appear as a witness before the said grand jury, and was then and there duly sworn as such, according to law, truly to testify before said grand jury, by said Charles Weidner, Jr., clerk of said court, by John Byrne, deputy of said Charles Weidner, Jr., clerk of said court as aforesaid, who then

and there was duly empowered and authorized by law as such
clerk and by said deputy to administer said oath; that the said
George B. Cox, so being duly sworn as aforesaid, did then and
there appear before said grand jury in the grand jury room at
the court house in and for the county of Hamilton aforesaid,
where said grand jury was then inquiring of offenses committed
within the limits of said county, and thereupon the said George
B. Cox, being so duly sworn as aforesaid, did then and there,
to-wit, on the 21st day of March in the year nineteen hundred
and six, before the grand jury aforesaid, at the county of Ham-
ilton aforesaid, in a certain proceeding before the said grand
jury and in a certain matter in relation to which an oath was
authorized by law, that is to say, in the proceeding and matter
wherein said grand jury was then and there inquiring of the
unlawful deposit in banks within the county of Hamilton afore-
said of moneys received in payment of taxes by the then treas-
urer of said Hamilton county and his predecessors in office, and
the receipt of interest on such moneys, so deposited, by ·said
treasurers as aforesaid and by other persons, and the aiding,
abetting and procuring by other persons in said Hamilton county
of said treasurers as aforesaid to make the said unlawful deposits
of the said moneys in said banks, and as to a matter material
to the inquiry then being made therein by said grand jury, did
willfully and corruptly, upon his oath aforesaid, depose, swear
and give evidence to the grand jury aforesaid, amongst other
things, in substance and to the effect following, that is to say:
that he, said George B. Cox, had never been consulted in regard
to the fact that moneys which had been paid to the treasurers
of Hamilton county as taxes were on deposit in the Cincinnati
Trust Company, of which he was president; that he surmised
that something of the kind was going on but that he had noth-
ing to do with it; that he only knew in a general way that for
years the banks of Hamilton county had been receiving deposits
from the treasurers of Hamilton county and were paying inter-
est thereon; that he did not receive, nor did any one for him
receive, any portion of the interest paid by said banks upon
moneys received in payment of taxes by and deposited with them
by Tilden R. French, when treasurer of Hamilton county; that
he knew nothing about where the balance over and above $15,-
000 which Tilden R. French got of the interest paid by said
banks on said moneys deposited with them by said Tilden R.
French, when treasurer as aforesaid, went; that he knew nothing
about the deposit of county funds with said banks during the
terms of Tilden R. French, Leo. Schott, Rudolph K. Hynicka
and John H. Gibson, as treasurers of Hamilton county, and the
payment thereon of interest by said banks and the collection ·by

any of the said treasurers of said interest, or what said treas-
urers did or what arrangements they made in regard to deposits
or interest; and that he, said George B. Cox, never received,
either directly or indirectly, any part of the perquisites which
said treasurers, that is to say, the treasurers of Hamilton county,
got by way of interest or otherwise as a result of said deposits,
that is to say, the deposits in the banks of Hamilton county by
the treasurers of Hamilton county, of said moneys, that is to
say, moneys received in payment of taxes by said treasurers of
Hamilton county; which said evidence so given to the said grand
jury was willfully false and corrupt, for in truth and in fact
he, said George B. Cox, had been consulted, and well knew and
took part in the arrangements made, in regard to the deposits of
moneys, paid to treasurers of Hamilton county as taxes, in the
Cincinnati Trust Company, and the payment and receipt of
interest thereon; and in truth and in fact he knew definitely
and positively that for years the banks of Hamilton county had
been receiving deposits from the treasurers of Hamilton county
and were paying interest thereon, a large part of which interest
he then and there well knew he had theretofore knowingly re-
ceived; and in truth and in fact he had received a large sum,
to-wit, about $17,500 of the interest paid by the banks of Hamil-
ton county on moneys received in payment of taxes by and de-
posited with them by Tilden R. French when treasurer of Hamil-
ton county; and in truth and in fact he had himself received
the balance, to-wit, about $17,500 over and above the portion,
to-wit, about $15,000 which Tilden R. French got of the interest
paid by the banks of Hamilton county on said moneys deposited
with them by said Tilden R. French, when treasurer, as afore-
said; and in truth and in fact he knew that Tilden R. French,
Leo Schott, Rudolph K. Hynicka and John H. Gibson, when
treasurers of Hamilton county, had deposited county funds with
the banks of Hamilton county and that said banks had paid in-
terest thereon, and the arrangements whereby said treasurers had
collected and to him turned over a large part and portion thereof;
and in truth and in fact, as he then and there well knew, he
had theretofore received a part of the perquisites; that is to say,
a part of the interest, gratuities and compensation theretofore
paid by the said banks of Hamilton county on account of the said
deposits by the treasurers of Hamilton county of the said moneys
received in payment of taxes by the treasurers of Hamilton
county as aforesaid, that is to say, he, the said George B. Cox,
had theretofore received a large sum, to-wit, about $48,500 from
John H. Gibson, when treasurer of Hamilton county, and a large
sum, to-wit, about $17,500 from Tilden R. French, when treas-
urer of Hamilton county, which said moneys were, as he, said

George B. Cox, well knew, a part of the perquisites, that is to say, a part of the interest, gratuities and compensation theretofore paid by the said banks of Hamilton county to treasurers of Hamilton county, on account of the said deposits of the said moneys as aforesaid; which said matters so sworn and testified to before the said grand jury by the said George B. Cox were then and there material matters in the inquiry then being made by the said grand jury, and which said matters so then testified by said George B. Cox to be true, he, the said George B. Cox, then and there knew to be false.

"And so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said George B. Cox on the 21st day of March, in the year nineteen hundred and six, at the county of Hamilton aforesaid, in manner and form aforesaid, did unlawfully commit willful and corrupt perjury; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio.

"HENRY T. HUNT,
"Prosecuting Attorney, Hamilton County, Ohio."

The first indictment was returned February 27th, 1911; the second March 31st, 1911. The prosecutor and the jury were the same in each. No reason is assigned by the state for this second indictment.

The prosecuting attorney has demanded the right to elect to proceed upon one of these indictments and reserve the other for use in the event the first one selected be set aside by the court.

The proper time for the prosecutor to elect is after the indictments have been attacked and both have been found good. The demand to elect will be refused in the interest of speedy and inexpensive justice. See, also, State v. Granville, 45 Ohio St., 264, and at 278; State v. Wing, 66 Ohio St., 407, 415.

An accused person has the right to defend himself when attacked and as often as attacked. This accused has filed a motion to quash in both cases.

"A motion to quash may be made where there is a defect apparent upon the face of the record, including defects in the form of the indictment, or the manner in which an offense is charged." General Code, Section 13621.

The motions to quash filed in each case, being identically the same, will be considered together.

All crimes are defined by the Legislature. Unless the people, by their representatives, the Legislature, had created the crime of perjury, there would be no such crime. No wrong act is a crime in Ohio unless the Legislature has so decreed. The Legislature has even power to repeal the murder statutes and murder in Ohio would be unpunished. Perjury, under the laws of Ohio. on the 21st day of March, 1906, was:

"Whoever, either verbally or in writing, on oath lawfully administered, willfully and corruptly states a falsehood, as to any material matter, in a proceeding before any court, tribunal, or officer created by law, or in any matter in relation to which an oath is required by law, is guilty of perjury and shall be imprisoned in the penitentiary not more than ten years nor less than three years." Revised Statutes, Section 6897.

The motions to quash in both cases are upon the following grounds:

"1.   That the grand jury which reported the indictment against the defendant was not drawn, summoned or impanneled according to law.

"2.   That the indictment fails to aver a legal oath administered to said defendant.

"3.   The oath set forth in said indictment alleged to be administered to the defendant was not lawfully administered, or authorized by law, but was contrary to law.

"4.   The allegation as to the proceeding and matter pending before said grand jury is indefinite and misleading.

"5.   Said indictment fails to allege or describe any matter or proceeding properly cognizable by said grand jury concerning which the said alleged false statements were made.

"6.   Said indictment charges in one count several separate and distinct alleged offenses, and is bad for duplicity.

"7.   That the averments in said indictment as to the form of the same and the manner in which said offense is charged, are so vague, indefinite, uncertain and misleading that the defendant is not properly informed of the charge against him, or what he shall meet at the trial, and can not prepare his defense.

"8.   Because said indictment does not charge an offense under the laws of Ohio.

"9.   Because it does not appear from said indictment that the alleged false testimony of the defendant was material to any inquiry within the lawful jurisdiction of said grand jury.

"10.   Because it appears by said indictment, that the investigation which the grand jury had under consideration at the

time the defendant is alleged to have committed perjury, if it had under consideration any matter within its jurisdiction, was directed against this defendant; that it was a violation of his constitutional right to require him to attend before the grand jury and take an oath; that said alleged oath was not lawfully administered; that no indictment for perjury can be predicated upon testimony so obtained; and that said indictment so obtained is invalid under Section 10 of Article I of the Constitution of Ohio, and Section 12842 of the General Code.

"11.  Other defects apparent upon the face of the record."

The details of criminal procedure are created and defined by the Legislature. These details are the technicalities of the science of law for the punishment of crime. Unless the people, by their representatives, the Legislature, had created the dilatory pleas they would not exist.

THE CONSTITUTION OF OHIO.  BILL OF RIGHTS:

Article I, Section 10, provides:

" *   *   *  No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury. In any trial, in any court, the party accused shall be allowed to appear and defend in person with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district, in which the offense is alleged to have been committed; nor shall any person be compelled, in any criminal case, to be a witness against himself, or be twice put in jeopardy for the same offense."

Also, the Constitution of the United States, fifth amendment provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

This accused has been indicted twice on the same charge.

The Legislature has provided by various acts that the accused shall be given—the indictment, have time to examine it; and, then may except thereto, by motion to quash, by plea in abatement, by demurrer, by plea in bar, all before being required to plead guilty or not guilty. These are rights given to the accused by the people—the state—and it is his duty to avail himself thereof. If he does, and time and money be spent, the people must blame themselves and not the accused, his counsel or the court.

No court can deprive an accused person of his rights under the acts and the Constitution.

The people of Ohio live under two constitutions—state and federal. These constitutions are the will of the people, created by the majority, in their sober moments, to protect the minority The Constitution must at all times and at all hazards be upheld otherwise anarchy and chaos will prevail. A court has no discretion in the matter of giving effect to constitutional guarantees. Every state officer swears to support both constitutions and to obey all laws, and this must and shall be done in spite of hue and cry or even mob violence. If the people do not like the acts of the Legislature, they can be amended or repealed. If they do not like the constitutions, they can be amended or changed. But until amended or repealed or changed, it is the duty of the officers of the people to enforce the laws.

The record in case No. 16466 discloses that on March 31st, 1911, the same grand jury returned its second same indictment against the accused; that a warrant for his arrest was issued, motion for change of venue filed, affidavits of Prosecutor Henry T. Hunt and Arthur Espy filed in support thereof, entry ordering change of venue made by the court. The undisputed evidence of the events of that day show that the grand jury and the prosecuting attorney and the judge of the court, Frank M. Gorman, sitting in Room 6, entered into a conspiracy to deliberately deprive the accused of his constitutional rights and to have him rushed to Batavia, Clermont county, Ohio, without any hearing whatever. The affidavits of Mr. Hunt and Mr. Espy are very lengthy. Thus it was impossible for Judge Gorman to have read or have heard them read as the law requires. The whole transaction did not occupy five minutes. It is to be hoped the grand

jury were innocent and misled and were not parties to that conspiracy.

The tenth ground of the motion to quash is:

"Because it appears by said indictment, that the investigation which the grand jury had under consideration at the time the defendant is alleged to have committed perjury, if it had under consideration any matter within its jurisdiction, was directed against this defendant; that it was a violation of his constitutional right, to require him to attend before the grand jury and take an oath; that said alleged oath was not lawfully administered; that no indictment for perjury can be predicated upon testimony so obtained; and that said indictment so obtained is invalid under Section 10 of Article I of the Constitution of Ohio, and Section 12842 of the General Code."

It is claimed by the state that a motion to quash covers only defects in form or manner of statement and not defects which go to the substance of the indictment, and that the reasons claimed in ground 10 are as to substance only and should more properly come in under a demurrer or a plea in abatement. Perhaps it would have been better to have raised the tenth ground by demurrer than by motion to quash. But the accused raises it now and by motion.

"A motion to quash may be made where there is a defect apparent upon the fact of the record.  *  *  *"

The court is of the opinion that "defect upon the face of the record," as well as demurrer, may cover substance. At all events it is better, if possible, to dispose of this ground now than to resort to a "technicality" and delay the issue by compelling a demurrer to be filed and go over this ground again. There is no direct authority against this holding and many in favor of it. *Stahl* v. *State,* 11 Ohio C. C., 23, at 24; *State* v. *Bauer,* 1 O. N. P. Rep., 103, at 104; *Evans* v. *State,* 6 N.P., 129, at 130 and 132; *State* v. *Trisler,* 49 Ohio St., 583; *Ex Parte Bushnell,* 6 Ohio St., 599.

An indictment is in effect a petition. It is the state's statement of its cause of action. The grand jury which returned the indictment has gone out of existence. The indictment, if defective, can not be amended. If the defect be in form or manner or substance, the indictment is destroyed. If the defect be such as can be remedied, another grand jury can do so.

The state's definition of perjury embraces and compels the following facts to be stated in the indictment:

The oath must have been lawfully administered, the falsehood must have been willful and corrupt, the falsehood must have been as to a material matter, and in a proceeding before a court, tribunal or officer created by law. If any one of these facts be wanting, there is no perjury. All these facts must exist. The gist of the tenth ground in the motion is that the alleged oath was not lawfully administered and that the testimony obtained from the accused thereunder was in direct violation of Section 10, Article I, of the Constitution of Ohio, and the spirit of the Fifth Amendment to the Constitution of the United States —"* * * nor shall any person be compelled in any criminal case to be a witness against himself. * * *"

Was the accused compelled to be a witness against himself? The indictment says that at the time the accused appeared before the grand jury under subpoena—

"* * * said grand jury * * * was then and there inquiring of the unlawful deposit in banks * * * of moneys * * * and the receipt of interest on such moneys * * * and the aiding, abetting and procuring by other persons * * * of said treasurers * * * to make the said unlawful deposits of the said moneys in said banks," and corruptly, etc., upon oath he said that he "* * * had never been consulted in regard to the fact that (public) moneys * * * were on deposit in the Cincinnati Trust Company, of which he was president. * * *"

The main issue in the indictments was the unlawful use of public money by treasurers and their aiders and abettors. The prosecuting attorney in his brief submitted to the court admits this construction of the indictment, when, on page 15, he says:

"What fact in issue was? The main fact in issue was whether the treasurers had deposited public funds and how much, contrary to Section 6841 (see Section 6841) and whether any one had aided, abetted, or procured them to do so (see lines 51 and 52). Aiders and abettors are equally guilty with principals. Section 6804, Bates R. S."

If the issue before the grand jury were the aiding and abetting of treasurers to misplace public money, and the accused were the president of the Cincinnati Trust Company, and, an such,

consulted with the treasurers of the county and assisted in getting them wrongfully to place money in his bank, he certainly was being considered by the grand jury in the light of an accused person and just as much so as if he had been named by them. and of course it must follow that he was a witness against himself. A criminal case was being investigated. The grand jury can investigate no other kind of a case. Was he compelled to be a witness at that time? The indictment says:

" * * * that on or about the 21st day of March, in the year nineteen hundred and six, George B. Cox was then and there subpoenaed to appear as a witness before the said grand jury and was then and there duly sworn as such. * * *"

The accused was compelled to obey the subpoena. He took the oath before the clerk outside of the grand jury room. He would have been compelled to have taken the oath. He then became a witness. When he was interrogated as to the above matter at issue he at once became a witness against himself as an aider and abettor.

Was he a voluntary witness?

If he had refused to answer he would have been cited before the court in contempt proceedings. This would have been in direct violation of his constitutional rights.

The accused did not know and could not have known what was the issue before the grand jury. The prosecuting attorney and the grand jury did know. That grand jury had no right to compel the accused to be a witness before it on that issue. The accused was exempt from being a witness. His constitutional right was violated. Nothing said by the accused at that time before that grand jury can be the predicate of any criminal charge against him by any indictment.

The state, in its briefs, practically admits that unless it appear that the accused voluntarily appeared and gave testimony, the indictment is bad and would be set aside on demurrer.

Both indictments are void and the motions to quash are granted upon the tenth ground. Therefore, it is not necessary to pass on the other ten grounds.

The authorities are uniform that the motions to quash must be granted, some of which are as follows:

*The State* v. *Gardner*, 88 Minn., 130:

Syl. "If the defendant in a criminal case is compelled to be a witness against himself before the grand jury it is a violation of the guarantee of the Constitution that no person in a criminal case shall be compelled to be a witness against himself, and it is the imperative duty of the court in such a case to quash the indictment found against him, although his name is not indorsed thereon as a witness."

At page 138:

"If in fact the defendant was compelled to be a witness against himself before the grand jury it was a violation of his personal right guaranteed to him by the Constitution of the state. which provides that no person in a criminal case shall be compelled to be a witness against himself. If such were the case it was the imperative duty of the court to grant his motion to quash the indictment, for courts have no discretion in the matter of giving effect to constitutional guarantees." *Boyd* v. *United States,* 116 U. S., 616; *Counselman* v. *Hitchcock,* 142 U. S., 547.

At page 139:

"The constitutional guarantee is not that no person shall be compelled to *give evidence against himself* which is made the basis of an indictment against him, but that it is that he *shall not be compelled to be a witness against himself.* This constitutional guarantee must receive a liberal construction to the end that personal rights may be protected."

*United States* v. *Edgerton,* 80 Fed., 374:

Syl. 2. "An indictment should be quashed when it appears that the defendant was compelled by subpoena to attend before the grand jury and give material testimony without knowing that his own conduct was under investigation."

At page 375:

"It is fatal to the indictments that the defendant was called to testify in the particular matter from which they resulted, without being informed or knowing that his own conduct was the subject under investigation."

At page 376:

"The court holds upon obvious principles that the constitutional provision referred to, as well as like provisions adopted by the various states, must have a liberal construction for the protection of personal rights. Neither evasion nor subterfuge can be permitted to destroy them."

*United States* v. *Bell,* 81 Fed. Rep., 831:

Syl. 9. "Unless a witness, manifestly ignorant of his constitutional right to remain silent in respect to self-incriminating testimony, is informed of that right by a special pension examiner, before whom he is subject to an inquisitorial examination. so that he may protect himself, or consult counsel if he desires, the examination can not be used in evidence against him, even on an indictment for false swearing in the progress of the examination itself."

18 Abbott's New Cases, page 96, *People* v. *Singer:*

Syl. 2. "If the grand jury require the accused to appear before them, an indictment found after receiving even his voluntary statements made upon being informed that there was no obligation to answer, should be quashed."

At page 97:

"The suggestion is made that the grand jury sent for this prisoner in the exercise of the powers conferred upon them by this section. There is nothing to indicate that they did. Furthermore the privilege of a defendant in a criminal case to testify in his own behalf is one which can not be forced upon him. If he becomes a witness, it must be by his own act, voluntarily, and without constraint put upon him by any officer or agency of the law. That this is the rule in criminal trials, there can be no doubt. In my opinion, no less stringent rule is applicable to the investigation of a charge against a particular person by a grand jury. The power of the grand jury to cause explanatory evidence to be produced, if they believe it is within reach, must be exercised with reference to the limitation that so far as the accused person is concerned, against whom complaint is made before them and against whom their inquiry is directed, he should not even be required to attend as a witness before them, unless of his own free will, best made by his own request."

111 New York Supplemental, page 133, *People* v. *Gillette,* at page 136:

"A person against whom the inquiry of the grand jury is directed should not be required to attend before that body, much less be sworn by it, and, if he is and an indictment be found, it should be set aside upon motion, and if not, if the fact appears upon the trial, it will invalidate a conviction. if one be had." And numerous cases there cited.

At page 139:

"A judicial investigation or trial has for its sole object the

ascertainment of the truth, that justice may be done. It holds out every inducement to a witness to tell the truth by inflicting severe penalties upon those who do not. This inducement would be destroyed if a witness could not correct a false statement except by running the risk of being indicted and convicted for perjury. The insurance investigation developed a serious situation as to the management of life insurance companies, and it may be, and very likely is, that some of the officers of such companies are liable to and should be punished criminally for what they did, but, when this is done, it must be done according to the law of the state. Ours is a government of law, and public clamor, no matter how loud or long continued, is not evidence, nor is it a justification for judicial action. It is a matter of the highest regard to the people of the state that persons who commit crimes should be punished in a legal way. If the constitutional and statutory provisions have to be violated in order to inflict the punishment, then it had better not be done, because to do so would be nothing less than the act of the mob under the guise of law.''

126 App. Div. (New York), *People* v. *Gillette,* page 665, at page 667:

''The Constitution of this state provides that 'no person shall be held to answer for a capital or otherwise infamous crime * * * unless on presentment or indictment of a grand jury * * *; nor shall he be compelled in any criminal case to be a witness against himself.' The 5th amendment to the federal Constitution contains a similar provision. The code of criminal procedure also contains a provision to the effect that 'no person can be compelled in a criminal action to be a witness against himself.' A proceeding before a grand jury, for the purpose of determining whether or not a crime has been committed, is a 'criminal case' within the meaning of the constitutional provision (*Counselman* v. *Hitchcock,* 142 U. S., 547; *People, ex rel Taylor,* v. *Forbes,* 143 N. Y., 219). The investigation which the grand jury had under consideration at the time defendant is alleged to have committed perjury, while ostensibly directed against John Smith et al, was in fact one against the defendant himself and other officers of insurance companies. He came just as much within the scope of the investigation as though he had been designated by name. It was a violation of his constitutional right to require him to attend before the grand jury and take an oath. When he took the oath he thereupon became a witness and the constitutional provision is that he could not 'be compelled in any criminal case to be a witness against himself.' An indictment obtained against him in that way would be invalid and he could not be convicted of perjury for the testimony which he gave,

inasmuch as the oath could not be legally administered to him. The charge of perjury can not be sustained unless it be first proved that the testimony was given in an action or proceeding where an oath is authorized by law and that the person charged took an oath in one of the forms recognized by law. · *O'Reilly* v. *People*, 86 N. Y., 154; *Case* v. *People*, 76 N. Y., 242; *Lambert* v. *People*, 76 N. Y., 220; *Ortner* v. *People*, 4 Hun., 323; *People* v. *Albertson*, 8 How. Pr., 363; *People* v. *Tracy*, 9 Wend., 265.''

The syllabus in *State* v. *Froiseth*, 16 Minn., 296, is:

''When a defendant is required by the grand jury to testify touching a criminal charge against him, pending before them, and in pursuance of such requisition does testify before them touching such charge, the indictment for such offense returned by the grand jury will be set aside.''

*Emery's Case,* 107 Mass., 172:

''The provision of the Declaration of Rights, that no subject shall be compelled to accuse or furnish evidence against himself. exempts the subject from disclosing the circumstances of his offense as well as making confession of guilt; applies to investigations ordered and conducted by the Legislature, or either of its branches; is regulated therein by the same rules as in judicial and other inquiries; and is not dispensed with by any statute which fails to secure the subject from future liability, and exposure to be prejudiced, in any criminal proceeding against him, as fully and extensively as he would be secured by availing himself of the constitutional privilege.''

*Lindsey* v. *State,* 69 Ohio St., 215, at page 223:

''We are not commending the practice of subpoenaing persons suspected of crimes as witnesses before a grand jury which has been summoned, to enquire respecting that crime; indeed we do not hesitate to characterize it as improper practice.''

At page 223:

''The only feature which, according. to the facts stated, is shown to have been involuntary, was the appearance in obedience to the subpoena. That would, in and of itself, be regarded as compulsory process.''

The Supreme Court in the Lindsey case bases its holding on the ground that whatever occurred in the jury room was clearly not prejudicial; that there was other evidence warranting an indictment; that another indictment would surely follow a setting aside of the one in question; clearly implying that if the indict-

ment rested alone on the testimony of the accused it would be quashed.

*Adams* v. *State,* 129 Ga., 248 (58 S. E., 822; 17 L. R. A. [N. S.]. 468):

"The spirit of the law is that one accused of crime shall not be required to be put under oath, and thus be placed in the dilemma of either being required to testify as a witness against himself, or being subject to the penalties of false swearing.   *   *   *   If he should decline to be sworn at all, or answer questions, he must know that the effect would be disastrous to him.   It is not a case where one may lawfully be called as a witness generally. but where, if certain questions are put to him, he may claim his privilege.   It is a case where the accused should not be sworn at all."

*Brown* v. *Walker,* 161 U. S., 591, 596:

"The maxim *nemo tenetur seipsum accurare* had its origin in a protest against the inquisitorial and manifestly unjust methods of interrogating accused persons, which has long obtained in the continental system, and, until the expulsion of the Stuarts from the British throne in 1688, and the erection of additional barriers for the protection of the people against the exercise of arbitrary power, was not uncommon even in England.   While the admissions or confessions of the prisoner. when voluntarily and freely made, have always ranked high in the scale of incriminating evidence, if an accused person be asked to explain his apparent connection with a crime under investigation, the case with which the questions put to him may assume an inquisitorial character, the temptation to press the witness unduly, to browbeat him if he be timid or reluctant, to push him into a corner, and to entrap him into fatal contradictions, which is so painfully evident in many of the earlier state trials, notably in those of Sir Nicholas Throckmorton and Udal. the Puritan minister, made the system so odious as to give rise to a demand for its total abolition.   The change in the English. criminal procedure in that particular seems to be founded upon no statute and no judicial opinion, but upon a general and silent acquiescence of the court in a popular demand.   But, however adopted, it has become firmly embedded in English, as well as in American jurisprudence. · So deeply did 'the iniquities of the ancient system impress themselves upon the minds of the American colonists that the states, with one accord, made a denial of the right to question an accused person a part of their fundamental law, so that a maxim, which in England was a mere rule of evidence, became clothed in this country with the impregnability of a constitutional enactment."