## BONNER *v.* THE STATE.

1. The court's definition of reasonable doubt, as given in his charge to the jury, was substantially correct.
2. The statement of the accused to the sheriff in regard to the crime charged and the circumstances attending its commission amounted to a confession, and afforded direct evidence of his participation in the crime and of his guilt of the offense charged; and the court did not err, there being no written request to charge upon the subject of circumstantial evidence, in omitting to charge the jury upon that subject.
3. Under the evidence as to the circumstances under which the confession of the accused was made, the court did not err in admitting it in evidence and in submitting to the jury, under proper instructions, the question as to whether it was voluntarily made.
4. There was sufficient evidence to authorize the verdict.

No. 2686. OCTOBER 15, 1921. REHEARING DENIED NOVEMBER 15, 1921.

Indictment for murder. Before Judge Park. Jones superior court. May 19, 1921.

*Paul Maynard* and *Edward S. Ragsdale,* for plaintiff in error.

*George M. Napier, attorney-general, Doyle Campbell, solicitor-general, Seward M. Smith, asst. atty.-gen.,* and *A. Y. Clement,* contra.

BECK, P. J. Joe (Buster) Bonner was tried under an indictment charging him with the offense of the murder of A. S. Jones. Upon the trial he was found guilty, no recommendation of mercy being made. He made a motion for a new trial, which was overruled, and he excepted.

1. The court in part charged the jury as follows: " The court charges you, when the defendant files a plea of not guilty to this bill of indictment, it puts in issue every material allegation contained therein; and it devolves upon the State to satisfy the minds of the jury by the evidence in the case beyond a reasonable doubt of the defendant's guilt. A reasonable doubt means exactly what it says. A reasonable doubt may grow out of the evidence, or the want of evidence, or be engendered by the defendant's statement. While the law requires the State to demonstrate the guilt of the defendant by the evidence in the case beyond a reasonable doubt before you would be authorized to convict him, the law does not require the State to demonstrate the guilt of the defendant to an absolute or mathematical certainty. A reasonable doubt does not mean a fanciful doubt, it does not mean a conjectural doubt, it does not mean an imaginative doubt; but, as I said to you, it means a doubt founded upon reason." This charge was excepted to upon the ground that it does not properly define reasonable doubt, and because the court failed to charge that the burden of proof was upon the State of Georgia to prove every material allegation in the indictment. The exceptions to this charge show no ground for the grant of a new trial. The definition of reasonable doubt was substantially correct, and the fact that the judge did not in this particular part of the charge state to the jury that the burden was upon the State to prove the material allegations in the indictment does not render this part of the charge defective. The first ground of the amended motion for a new trial is an attack upon the charge of the court there set forth; and if the court failed altogether to charge upon the subject of the burden of proof, that should have been made a distinct ground of the motion, and the failure to charge upon

that subject somewhere in the court's instructions to the jury affords no ground of criticism of the excerpt from the charge that is brought under review in the ground of the motion we are now dealing with.

2. Error is assigned upon the failure of the court to charge the jury on the law of circumstantial evidence, and to instruct them that to warrant a conviction on circumstantial evidence the facts proved must not only be consistent with the hypothesis of guilt, but must exclude every other hypothesis save that of the guilt of the accused. It is contended by counsel for the movant that the evidence required this charge upon circumstantial evidence. This criticism of the court's charge is not meritorious, unless the State's case was based entirely on circumstantial evidence. The plaintiff in error contends that it was such a case. This contention, however, is not sound if the testimony of the witness Middlebrooks, the sheriff of the county, in regard to a statement made to him by the accused was for the consideration of the jury, under the court's instructions. The witness referred to testified that in company with other named parties he arrested the accused at the home of one Harrison Jones. Witness had heard that the accused had a pistol in his possession, said to be the same as that which the deceased had; he found the pistol on the accused, and it looked like the one described to witness as the one belonging to the deceased. Witness took the accused to the front porch of the house where he was arrested; and at this time Tucker, one of the parties accompanying witness, hit the accused over the head with a pistol. Witness further testified: " I asked him [the accused] where he got the gun. He said from Sam Myrick on Monday morning. I asked him if it was not Mr. Jones' gun. He replied, ' If it is, I don't know it.' I then said, ' Buster, you know something about this killing; tell me about it,' and I said, ' Nobody is going to hurt you.' He said, ' If you will take me to where Mr. Jones was killed, I will tell you all about it.' . . When he made the request I took him over there. . . We reached his house at 10 o'clock in the morning, about a week after the homicide. When we got there Buster Bonner got out of the car and said, " Come on, I will show you,' and he showed us how the door was latched. Buster Bonner is Joe Bonner.

He told us how he called Mr. Jones; said that Jim Sims called him, saying 'Sims, Sims,' and that Jones said, 'Knock 'em off,' and that Mr. Jones got up and opened the door, and Jim Sims struck him with the axe; that Jones was standing in the door when Sims struck him again two or three times with the axe and began to search his pockets, and got what money he had and a pistol out of the trunk. The witness further testified: "The house is in Jones county. Accused said that Mr. Jones was struck with an axe. I saw his body; he was killed in that room. He lived by himself. He was hit a blow with the eye of the axe." On cross-examination the witness testified: "Mr. Tucker has never been a deputy at all. He has worked for me around. He has gone with me lots of times. To the everyday person seeing him associated with the sheriff he would think he was a deputy. The statement made by Bonner was made after he was struck by Tucker. It was a pretty bad blow; it knocked the blood out; it bled some. . . We made a thorough search the day we arrested Bonner, and found a club-axe, and a few days later found another axe that was not there. the day we arrested Bonner . . As to there being a password, Bonner told me that when Sims came up he called to Mr. Jones and said, 'Mr. Jones, this is Sims, Sims,' and that Mr. Jones said, 'Knock 'em off.' Mr. Jones could not talk, that is, I could not understand what he said. He was paralyzed on one side. Some people in common touch with him claimed that they could understand him. Sims worked on the place with him. I saw the clothes that Bonner had on. Bonner could have struck the first lick from where he was standing. But where he was when Mr. Jones fell he could not have, unless he moved. There were four or five licks passed. There were splotches of blood on top of the house, some on the door and some on the walls. His feet was a foot from the door. I think that it was possible for Bonner to have struck the lick and to have gotton the blood on his clothes in the manner it was on them. I have made the statement that I thought Sims was in it. I have said that it looked like if Bonner used the axe he would have got more blood on his clothes than were on there." Redirect: "Bonner stated that Jim Sims got the axe at his (Jim Sims') house. He said Jim Sims went up there in the evening about sundown, and

that he borrowed four dollars from Jim Sims. He said Jim Sims told him Mr. Jones had some money, and he wanted to get it that night, and for [Bonner] to meet him back down there, so they would go and kill him and get it."

Considering all that Bonner, according to the testimony of the sheriff, said to the latter, the accused made a confession. It was not a mere incriminatory statement. His confession showed that the crime of murder was committed, and that he was present participating in the commission of the crime. Accepting the testimony of the sheriff as true, the defendant said that Jim Sims told him Mr. Jones had some money and he wanted to get it that night, and for defendant to meet him back down there, so they would go and kill him and get it. And the statement by the accused which we have quoted above shows that he was present at the time when Jones was killed. The language of the defendant in making the confession is not altogether clear, and is evidently that of an illiterate and ignorant man, but it contains the unequivocal statement that Sims had proposed to him that they should go to Jones's house that night, and for the defendant to meet him "back down there, so they would go and kill him and get it" (the money). It can scarcely be contended, in the face of this statement to the effect that defendant went "back down there," and from the place thus designated on to Jones's house that night, and stood there while Sims hit the deceased with an axe, that he was not fully aware of Sims's purpose in going to Jones's house. And if he joined Sims, as he himself admits that he did, and stood by while Jones was killed under those circumstances, whether he struck a blow himself or not, he was guilty of the crime of murder, and his statement in regard to it is a confession. And regarded in that light it affords direct evidence of the commission of the crime, and the case did not rest entirely upon circumstantial evidence; and consequently the court did not err in omitting to charge, in the absence of a request to do so, upon the law of circumstantial evidence.

3. Another ground of the motion for new trial raises the question as to the admissibility of this evidence, in view of our statute making the evidence of a confession inadmissible where it appears that it was made upon the remotest fear of punish-

ment or the slightest hope of reward. The fact that a person by the name of Tucker, who was not a deputy sheriff, but who was with the sheriff at the time he went to where the accused was, struck the defendant on the head with the butt of a pistol, does not show that the confession was induced by the remotest fear of injury, as is claimed in the brief of counsel. The act of striking the prisoner was, of course, most reprehensible, but it does not appear that it was done in connection with any attempt to make the prisoner confess, or that he was threatened with injury if he did not confess. The prisoner did not then immediately make his confession; the sheriff intervened and prevented Tucker from making a further attack on the prisoner, and then the prisoner and one James and the sheriff went out behind another house, and the sheriff then said to the prisoner, "You know something about this killing; tell me about it. Nobody is going to hurt you." To which the accused replied, "If you will take me to where Mr. Jones was killed, I will tell you all about it;" the location of the crime being a mile and a quarter from the place at which this colloquy took place. The sheriff then carried the prisoner to the place of the crime. The sheriff and a party named Bauchomb went with him in an automobile; when they arrived at the house in which the crime was committed, without further colloquy the prisoner made the statement which we have set forth above and held to be a confession. Under the circumstances narrated, the court did not err in admitting the evidence of confession and in submitting to the jury the question as to whether it was freely and voluntarily made.

4. There was sufficient evidence to authorize the verdict.

*Judgment affirmed. All the Justices concur, except Atkinson, J., absent on account of sickness.*