## DOWNS v. THE STATE.

No. 17666. Argued November 14, 1951—Decided January 16, 1952.

E. L. Rowland, J. W. Claxton and E. L. Stephens, for plaintiff in error.

Eugene Cook, Attorney-General, W. W. Larsen, Solicitor-General, J. R. Parham, Assistant Attorney-General, and Price & Spivey, contra.

Almand, Justice. Lanier Downs and Carl Moore were jointly indicted for murder, it being charged that they did on November 26, 1950, kill and murder one Harvel H. Moye by shooting him with a certain shotgun, "which the said Lanier Downs and Carl Moore then and there held, giving to the said Harvel H. Moye then and there a mortal wound" from which said Moye died. The defendants were separately tried. Lanier Downs was found guilty by the jury with a recommendation to mercy, and was sentenced by the court to life imprisonment. He filed a motion for a new trial on the general grounds and four special grounds, which was overruled, and in the present bill of exceptions assigns error on the order overruling the motion for a new trial as amended.

■ The first special ground of the motion complains that the court erred in permitting Howard L. Youmans to testify to certain incriminatory statements made by the defendant, to wit: "Well, I'm the man that done it." "If I hadn't seen him at this filling station Friday, 'he'd have been living today." It is

contended that the court erred in admitting this testimony, for the reason that Joe Durden, another witness for the State, testified that the defendant on trial was induced to make said statement in the hope of reward, in that Youmans, to whom the statement was made, had stated to the defendant "that it will go light with you," and therefore that the said alleged statements were not freely and voluntarily made.

The record discloses that, when Youmans was testifying for the State on direct examination, he stated that, while the defendant was under arrest and in jail, he asked the witness, "Is he dead?", and after the witness had answered in the affirmative, the defendant replied, "Well, there's one more son-of-a-bitch accounted for," and "Well, I'm the man that done it," and after the defendant had pulled up the sleeve of his coat and showed the witness where he had shot him in the arm, the defendant said, "If I hadn't seen him at this filling station Friday, he'd have been living today." The witness Youmans testified that these statements were freely and voluntarily made, that the witness did not promise the defendant anything, or put him in fear of bodily harm or injury, and that these statements were made in the presence of Chief Carter and Joe Durden. Chief Carter stated that he was present when the above statements were made to Youmans, that they were freely and voluntarily made, and no one promised the defendant anything if he made the statements, and that the defendant told them that they had gotten the right man. When this testimony as to these statements was given, counsel for the defendant made no objection until after the cross-examination of the State's witness, Joe Durden. On the cross-examination of Durden, in response to questions by counsel for the defendant as to what Youmans said to the defendant before he made the statements above set out, Durden testified as follows: "The only thing I remember him (the witness Youmans) saying about was that the truth would make it lighter, that is all I remember about that. . . He did not say, 'I will make it lighter on you,' but he said that it probably would make it lighter on you. . . He said something about the truth will pay—I can't tell you just exactly. I don't remember whether he said the truth will pay or it will go light on you, to be honest with you I can't recall just exactly the phraseology he used."

After the State had rested its case, counsel for the defendant objected to any admissions or incriminatory statements testified to by the witness Youmans, on the ground that they were not freely and voluntarily made, and the court reserved its ruling on this objection until after the defendant had rested his case; and, after argument, during the absence of the jury, the court overruled the objections of the defendant and allowed the testimony of Youmans to remain in evidence.

Where the preliminary examination of witnesses offered by the State shows that a confession by the defendant was freely and voluntarily made, without being induced by another by the slightest hope of benefit or the remotest fear of injury, such evidence is prima facie admissible for the jury's consideration. *Bradberry* v. *State,* 170 *Ga.* 859 (4) (154 S. E. 344). The fact that an alleged confession is made while the defendant is under arrest and accused of crime does not prevent the evidence from going to the jury. *Smith* v. *State,* 139 *Ga.* 230 (1) (76 S. E. 1016).

The fact that one of the witnesses for the State, on cross-examination, testified that the officer to whom the alleged confession was made testified as to circumstances which might be construed as holding out some hope of benefit and inducement for the defendant to make an incriminatory statement, would not of itself render the statement inadmissible. The State having made out a prima facie case that the alleged confession was freely and voluntarily made, it was a question for the jury to determine on conflicting evidence whether the alleged confession was freely and voluntarily made. *Bailey* v. *State,* 80 *Ga.* 359 (2) (9 S. E. 1072); *Adams* v. *State,* 129 *Ga.* 248, 251 (58 S. E. 822, 17 L. R. A. (N. S.) 468, 12 Ann. Cas. 158).

■ Special ground 3 complains that the court erred in giving to the jury the law relating to confessions, on the ground that there was no evidence to authorize the charge.

Two witnesses for the State testified that, on the day of the defendant's arrest and while he was in jail, on being informed that the deceased was dead, he stated, "Well, I'm the man that done it. . . If I hadn't seen him at this filling station Friday, he'd have been living today." These statements fully authorized the court to charge the jury on the law of confessions. See *Nail*

v. *State,* 142 *Ga.* 595 (3) (83 S. E. 226); *Edwards* v. *State,* 159 *Ga.* 419 (126 S. E. 16); *Edmonds* v. *State,* 201 *Ga.* 108 (1) (39 S. E. 2d, 24).

■ Special ground 2 complains that the court erred in admitting in evidence a certain shotgun found at the home of the defendant, on the ground that the same was never identified as the death weapon.

The evidence in this case shows that the deceased died from wounds caused by two shots from a shotgun, and that there was no eyewitness to the shooting. Two witnesses testified to hearing the firing of two shots from a shotgun just a few moments before the deceased was found lying on the ground in front of the home of .Mrs. McAfee. A policeman from the City of Wrightsville arrived at the scene of the shooting shortly after its occurrence, and found near the deceased the hull of a shotgun shell, and wadding that came out of the shell, which contained one and one-eighth ounces of No. 8 shot, and later he found the whole of another shotgun shell at the place of the shooting. The wadding of the shell· was found on the porch of the house where the shooting occurred and, on the morning following the shooting, the defendant and Carl Moore were seen together in a Model A pick-up truck, and a gun was in the truck with them. About 10 o'clock on the morning following the shooting the sheriff, at the time of arresting the defendant in his home, found in the latter's home a double-barrel 12-gauge shotgun, from which two shells were taken, one shell containing No. 6 and the other No. 8 shot.

We are of the opinion that it was not error for the court to admit in evidence the shotgun offered by the State. *Bradley* v. *State,* 151 *Ga.* 422 (107 S. E. 254); *Garner* v. *State,* 6 *Ga. App.* 788 (4) (65 S. E. 842).

■ Special ground 4 complains that the court erred in failing to charge the law relating to circumstantial evidence. It is not alleged in this ground that any request was made to ·give this principle of law in charge. The admission on the part of the defendant that he killed the deceased was direct testimony; and, though the other evidence in the record·as to the killing was circumstantial, it was not error to fail to charge the law relating to circumstantial evidence. *Perry* v. *State,* 110 *Ga.* 234 (3) (36

S. E. 781); *Bonner* v. *State,* 152 *Ga.* 214 (2) (109 S. E. 291); *Strickland* v. *State,* 167 *Ga.* 452 (1) (145 S. E. 879).

■ Under the general grounds, it is argued that the evidence for the State was not sufficient to prove the cause of the death of the deceased, or that it was caused by any act of the defendant. There is direct testimony that the deceased, while visiting in the home of Mrs. McAfee on the night of November 26, 1950, was called out on the front porch by the codefendant Moore; and that, a few minutes after he went out on the porch, a noise like scuffling was heard, and immediately two shots were heard. A few moments later the body of the deceased was found in front of the house with two shotgun wounds in the back, from which the deceased was bleeding profusely, and he died 45 minutes later from these gunshot wounds. There is no evidence in the record, direct or circumstantial, that he died from any other cause than the two shots in his back. This evidence was sufficient to prove the cause of his death. *Jester* v. *State,* 193 *Ga.* 202 (1) (17 S. E. 2d, 736); *Wright* v. *State,* 199 *Ga.* 576 (1) (34 S. E. 2d, 879); *Weaver* v. *State,* 200 *Ga.* 598 (2) (37 S. E. 2d, 802).

In addition to the admission made by the defendant that he shot the deceased, there was other evidence, though circumstantial, which was sufficient to authorize the jury to find the defendant guilty of murder.

There was no error in overruling the motion for a new trial as amended.

*Judgment affirmed. All the Justices concur.*