**WOOD et al. v. UNITED STATES.**

No. 7863.

United States Court of Appeals for the
District of Columbia.

Decided March 9, 1942.

266

————◆————

Mr. Francis P. Noonan, of Washington, D.C., for appellants.

Mr. Bernard Margolius, Assistant United States Attorney, with whom Mr. Edward M. Curran, United States Attorney, of Washington, D.C., and Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D.C., were on the brief, for appellee.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

Defendants, now appellants, were convicted of robbery. Pleas of guilty, allegedly made at the preliminary hearing in the Police Court, were admitted in evidence against them. The only question is whether this was proper. The Government says admissibility is governed solely by the law of voluntary or extrajudicial· confessions, the pleas were freely made, and therefore were properly admitted. Defendants say they were obtained illegally, hence were not admissible. Violation of the privilege against self-incrimination and deprivation of the right to counsel are the grounds asserted for exclusion.

The evidence at the trial was in conflict as to both the crime and the hearing. The victim identified defendants as the robbers. The arresting officer, Bean, testified they confessed to him and the victim identified them in his presence within three days after the crime. They denied having any part in it.

Defendants pleaded guilty to three misdemeanor charges just prior to the hearing. But they said they did not know a hearing was held on the charge of robbery and at no time pleaded guilty to it. Bean and Driscoll, a Police Court clerk, contradicted this. The latter testified he read the charge aloud to the defendants and they pleaded guilty after being asked, "How do you plead, guilty or not guilty?" Bean confirmed this. Driscoll also identified the record showing that the plea had been entered. On cross-examination he said defendants were not asked whether they desired counsel nor were they cautioned or informed concerning their rights. Generally, he stated, a plea of guilty or not guilty is demanded at such hearings, and the court does not inquire whether the accused have or want counsel or caution them that they need not plead or speak. He also testified that the purpose of the plea is to determine whether the court must hear evidence in order to decide whether the parties shall be held for further proceedings.[1]

Defendants were without counsel at the hearing. There is nothing to show that they had counsel previously or subsequently until the arraignment eleven days before the trial. The District Court then assigned counsel to defend them and they pleaded not guilty. The appeal is in forma pauperis.

If the pleas at the preliminary hearing were obtained illegally, the judgment must be reversed. They may have clinched the case against the defendants. There was no evidence of force or constraint beyond that involved in asking them to plead and receiving their responses without advice or caution. The record does not show that defendants knew their rights. Neither is there specific denial that they had such knowledge.

The trial court took the prosecution's view that the case is governed by the law of voluntary or extrajudicial confessions and gave appropriate instructions on this theory.

But as we see them, the principal issues are two: (1) Does the privilege against self-incrimination apply to the preliminary hearing; (2) if so, was it violated? Closely related is the question whether due process requires the accused to be informed of his right to counsel before he is asked to plead at such a hearing.

Before the issues are treated separately, the foundations of the respective positions

---

[1] Cf. note 13 infra.

should be stated more fully. There is no controlling authority directly in point. Analogies from the most approximate decisions are perplexing. This accounts for the hiatus in the argument concerning the applicable controlling law. It arises from a strange failure in the cases to discriminate between the rule of evidence and the constitutional privilege. They have a close kinship in fundamental policy. Each purposes protection against statements uttered by the tongue, though not by the unfettered will of the accused. But the occasions for their use and the pressures against which they protect are distinct.

■ The rule of evidence excludes untrustworthy communications. It arises from the common law. Except rarely, it has nothing to do with refusal to testify in court. It fills no need for checking abuses of *judicial* inquisition. For that the privilege stands guard. Rather the rule applies, more properly and frequently, to statements uttered out of court. It protects against extrajudicial physical and moral forces, applied where the privilege has no effect, and which take away the speaker's will and make his words another's, not his own. It excludes evidence so squeezed out because it has no value as proof.

■ The privilege has sanction in the Bill of Rights, and before that in a long but victorious struggle of the common law. It protects against the force of the court itself. It guards against the ancient abuse of judicial inquisition. Before it judicial power, including contempt, to enforce the usual duty to testify, dissolves.

No other violence or duress is needed to bring it into play than the asking of a question. It excludes response regardless of its probative value.

Alike as are their policies, confusion of their differences makes impossible proper application of the privilege and the rule of proof. Dean Wigmore rightly characterizes their prevalent confounding as "radically erroneous * * * in history, principle, and practice."[2] Obscuring their functions has befuddled the results in litigated cases and smeared the signboard arrows to the next case, which is ours. With these things in mind we turn to the arguments and the decisions relied upon to support them.

■ As has been said, the Government urges that the plea should be regarded as a voluntary confession of guilt, hence admissible. In this view there is no question of due process or self-incrimination. The only bar arises when compulsion destroys the confession's probative value. Confessions, it is said, do not become involuntary because elicited by questions,[3] or made while the confesser is under arrest,[4] or in the absence of counsel,[5] without warning or caution that the statement may be used against him,[6] nor by the concurrence of all these conditions in a single case.[7] Admittedly these principles apply when the statement is not made in the course of judicial proceedings. It is urged that they apply also to pleas of guilty made at preliminary hearings, and that the authorities uniformly sustain this view. Except when a statute prescribes the contrary rule,[8] it is claimed, the plea is admitted if

2 8 Wigmore, Evidence, 3d Ed.1940, § 2266, at 387.

3 Ziang Sun Wan v. United States, 1924, 266 U.S. 1, 14, 45 S.Ct. 1, 69 L.Ed. 131, and authorities cited; Hardy v. United States, 1893, 3 App.D.C. 35, 48; Wagner v. United States, 5 Cir., 1940, 110 F.2d 595, certiorari denied, 1940, 310 U.S. 643, 60 S.Ct. 1104, 84 L.Ed. 1411; State v. Hoskins, 1931, 327 Mo. 313, 36 S.W.2d 909.

4 People v. Randazzio, 1909, 194 N.Y. 147, 87 N.E. 112; State v. Hoskins, 1931, 327 Mo. 313, 36 S.W.2d 909; cf. Ziang Sun Wan v. United States, 1924, 266 U. S. 1, 45 S.Ct. 1, 69 L.Ed. 131; Sparf v. United States, 1895, 156 U.S. 51, 55, 15 S.Ct. 273, 39 L.Ed. 343; Pierce v. United States, 1896, 160 U.S. 355, 357, 16 S.Ct. 321, 40 L.Ed. 454; McAffee v. United

States, 1939, 70 App.D.C. 142, 146, 105 F.2d 21, 25.

5 State v. Neubauer, 1910, 145 Iowa 337, 124 N.W. 312; McCleary v. State, 1914, 122 Md. 394, 89 A. 1100; State v. Evans, 1939, 345 Mo. 398, 133 S.W.2d 389; State v. Robinson, 1915, 263 Mo. 318, 172 S.W. 598; State v. Murphy, 1915, 87 N.J.L. 515, 94 A. 640.

6 Powers v. United States, 1912, 223 U. S. 303, 313, 32 S.Ct. 281, 56 L.Ed. 448; Wilson v. United States, 1896, 162 U.S. 613, 622, 16 S.Ct. 895, 40 L.Ed. 1090; People v. Doran, 1927, 246 N.Y. 409, 159 N.E. 379, 384.

7 Anderson v. United States, 6 Cir., 1941, 124 F.2d 58, 67; State v. Evans, 1939, 345 Mo. 398, 133 S.W.2d 389, 393.

8 People v. Stein, 1927, 221 App.Div. 500, 224 N.Y.S. 667; State v. Hatcher,

made "knowingly and voluntarily."[9] Furthermore, it is said this is true, notwithstanding the accused is not informed of his right to counsel or cautioned in other respects.[10]

To support these views, the prosecution relies heavily upon Wilson v. United States, 1896, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090, and Powers v. United States, 1912, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448. Neither involved a plea of guilty or a confession or admission of guilt and therefore neither is precisely in point. In the former the defendant, charged with murder and not represented by counsel, was examined before a United States Commissioner, who did not caution or advise him as to his rights. The accused made a statement denying his guilt, but it contained answers to questions which were used on the trial to contradict his testimony. The statement was received over objection made solely on the ground *that it was made involuntarily.* The Supreme Court applied the general law relating to extrajudicial confessions and admissions and sustained the ruling. It held the statement voluntary on the Commissioner's testimony, not denied by the defendant, that it was so made, notwithstanding he was under arrest, did not have counsel, and was not warned or cautioned as to his rights. The Court noted that the defendant did not deny knowing that he could refuse to answer or say that, knowing, he would have done so. It pointed out that "his answers were explanations, and he appeared not to be unwilling to avail himself of that mode of averting sus-

picion." [162 U.S. 613, 16 S.Ct. 900, 40 L.Ed. 290.] His incarceration, lack of counsel and lack of warning were regarded as "matters which went to the *weight or credibility* of what he said of an incriminating character," and the Court added, *"as he was not confessing guilt, but the contrary,* we think that, *under all the circumstances disclosed,* they were not of themselves sufficient to require his answers to be excluded *on the ground of being involuntary as matter of law."* (Italics supplied)

In the Powers case the defendant, at a similar hearing, without counsel and without warning or advice by the Commissioner, volunteered a statement in his own behalf, which was held properly admitted, on the authority of the Wilson case. But, again, the statement was not a plea of guilty or a confession of guilt, and the decision was made on the basis of the rule of evidence without reference to the privilege or the right of counsel.

However, the Government concedes that a plea of guilty made on arraignment is not admissible at the trial, when it has been withdrawn and a plea of not guilty substituted. Kercheval v. United States, 1927, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009; Heim v. United States, 1918, 47 App. D.C. 485, L.R.A.1918E, 87. But it urges that the reasons for this, as given in the Kercheval case, do not apply to a plea before the committing magistrate. These were that the court's permission for withdrawal *adjudges* that the plea be "held for naught," so that (1) it ceases to be evidence and (2) its subsequent use would be

1896, 29 Or. 309, 44 P. 584, 110 Am.St. Rep. 65; State v. Stevenson, 1920, 98 Or. 285, 193 P. 1030; McNish v. State, 1903, 45 Fla. 83, 34 So. 219; Tuttle v. People, 1905, 33 Colo. 243, 79 P. 1035, 70 L.R.A. 33, 3 Ann.Cas. 513; cf. People v. Napthaly, 1895, 105 Cal. 641, 39 P. 29; Latta v. State, 1933, 124 Tex.Cr.R. 618, 64 S.W.2d 968; Cross v. State, 1920, 142 Tenn. 510, 221 S.W. 489, 9 A.L.R. 1354; Maki v. State, 1911, 18 Wyo. 481, 112 P. 334, 33 L.R.A.,N.S., 465; Adams v. State, 1907, 129 Ga. 248, 58 S.E. 822, 17 L.R.A.,N.S., 468, 12 Ann.Cas. 158; State v. Clifford, 1892, 86 Iowa 550, 53 N.W. 299, 41 Am.St.Rep. 518; 20 Am. J. 435; 22 C.J.S., Criminal Law, § 822, p. 1442.

9 United States v. Adelman, 2 Cir., 1939, 107 F.2d 497; Cooper v. United States, 6 Cir., 1925, 5 F.2d 824; Adams v. State, 1940, 138 Neb. 613, 294 N.W.

396; State v. Call, 1905, 100 Me. 403, 61 A. 833; State v. Briggs, 1886, 68 Iowa 416, 27 N.W. 358; State v. Ingram, 1933, 204 N.C. 557, 168 S.E. 837; State v. Blay, 1904, 77 Vt. 56, 58 A. 794; 2 Wharton, Criminal Evidence, 11th Ed. 1935, § 586. See, however, the authorities cited in notes 27 and 28 infra. Cf. note 24 infra.

10 State v. Briggs, 1886, 68 Iowa 416, 27 N.W. 358; State v. Blay, 1904, 77 Vt. 56, 58 A. 794; Dawson v. State, 1926, 21 Ala.App. 346, 108 So. 261; cf. United States v. Block, 2 Cir., 1937, 88 F.2d 618, certiorari denied, 1937, 301 U.S. 690, 57 S.Ct. 793, 81 L.Ed. 1347.

While a warning may not be decisive, it is nevertheless a material circumstance on the question of whether the confession was voluntary. Rex v. Voisin, [1918] 1 K.B. 531, 1 A.L.R. 1298.

in direct conflict with that determination, would nullify the substituted plea, and would conclude the case against the defendant. "Res judicata" thus becomes parent to paradoxical evidentiary offspring.

To support the asserted distinction, reliance is placed also upon United States v. Adelman, 2 Cir., 1939, 107 F.2d 497, in which, however, neither of the foregoing reasons, but another, is assigned for excluding the plea on arraignment. It is that withdrawal is allowed because the court finds that circumstances exist which make it unfair to hold the defendant to his plea and these make it equally unfair to permit its use as evidence. What such circumstances may be, if anything, beyond the fact that the court itself elicits the plea by requiring response to its inquiry, is not made to appear. Nevertheless, the court distinguished the plea on arraignment from the plea there involved, made before a United States Commissioner on a hearing for bail, on the ground that the latter did not have to be withdrawn in order to permit a plea of not guilty to be made. It added, however, that the plea then before it had not been obtained by unfair practices.

Defendants urge that the same principle which excludes the plea on arraignment should exclude the one made on preliminary hearing. But they offer reasons different from those given in the Kercheval, Heim and Adelman cases. They insist that admission of the pleas in the present circumstances amounted to compelling them to testify against themselves,[11] and violated the principle of Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461, and Powell v. Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, that the accused is entitled to counsel "at every step in the proceedings." 287 U.S. at page 69, 53 S.Ct. at page 64, 77 L.Ed. 158, 84 A.L.R. 527. They say the preliminary hearing is a judicial inquiry and constitutes a stage or step in the proceedings which finally determine their guilt or innocence. Accordingly, it is said, the constitutional guaranties against self-incrimination and of the right to counsel apply to it and were violated. Hence, they argue, the pleas were obtained illegally and were not admissible.

I

Applicability of the Privilege

■ There can be no doubt that the privilege applies to the hearing. But for apparent misconception, this would seem self-evident.[12] The nature of the hearing, the history of the privilege and the policy of its protection require this view.

The inquiry is essentially judicial. The subject matter is temporary restraint of the accused person's liberty. The function is to determine whether there is sufficient evidence to justify this. Commitment without evidence or on insufficient evidence would be arbitrary. The hearing, though informal, is in open court. It is not a Star Chamber affair. The court has power to examine the accused[13] and others. The decision requires the exercise of discretion on both facts and law. While it does not have finality for deciding guilt or innocence, it has that quality for the immediate purpose. The decision is reviewable, at any rate for abuse of discretion.[14]

■ All these are qualities of a judicial proceeding, not of a prosecutor's inquisition. Like all judicial proceedings, the hearing is inquisitorial in a broad sense. But its purpose is not to convict. That is the trial court's function. Nor is it to procure evidence *for conviction*. That is the prosecutor's duty. It is rather to decide between the informer or prosecutor

---

[11] Cf. also Counselman v. Hitchcock, 1892, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110.

[12] Ibid.

[13] See Orfield, A Resume of Supreme Court Decisions on Federal Criminal Procedure (1942) 14 Rocky Mt.L.Rev. 105, 112; Miller, The Preliminary Hearing (1929) 15 A.B.A.J. 414. D.C.Code (1941) § 11—602, provides: "The said [Police] court shall also have power to examine and commit or hold to bail, either for trial or further examination, in all cases, whether cognizable therein or in the District Court of the United States for the District of Columbia."

By § 11—606 the court is given broad powers, including those to issue process for arrest, compel attendance of witnesses, punish for contempt by fine and imprisonment, enforce its judgments similarly, etc.

[14] Cf. United States v. Ruroede, D.C. S.D.N.Y.1915, 220 F. 210; People v. Moss, 1907, 187 N.Y. 410, 80 N.E. 383, 11 L.R.A.,N.S., 528, 10 Ann.Cas. 309; Housel & Walser, Defending and Prosecuting Federal Criminal Cases (1938) §§ 165, 204.

and the accused on the preliminary question of his temporary restraint. In this the court stands between them, not as partisan, but as judge. In subject matter and function, the hearing is judicial. It should be so in essential procedure.

■ It cannot be, therefore, that the court's power to examine the accused, though conferred by statute, means authority to compel him to answer, with the sanction of contempt, or to do so in any manner which would violate constitutional right. Though we have held recently that there is no such right to a preliminary hearing, Clarke v. Huff, 1941, 73 App.D.C. 351, 119 F.2d 204, it does not follow that there are none in its course when one is held. Cf. Boykin v. Huff, 1941, 73 App. D.C. 378, 121 F.2d 865. The power of examination, therefore, goes no further than is constitutionally permissible in a judicial proceeding. Nor should the hearing be made a trap for luring the unwary into confession or admission which is fatal or prejudicial. So to use it would pervert its function and make of the court, not an arbiter, but an arm of the prosecution.

This would bring back the very evil the privilege was created to destroy. Historically it was the preliminary inquisition which gave rise to the privilege.[15] It was won through centuries of struggle against abuses of magisterial as well as more formal judicial inquisition. The modern hearing is the lineal descendant of the ancient preliminary examination. But its character has changed with evolution of the privilege and other constitutional guaranties. Perhaps the most ancient ancestor of the privilege in the common law system was the practice of the ecclesiastical courts in putting laymen to answer ex officio to penal charges. The resulting jurisdictional controversy ended in stripping them of this power when the Court of High Commission was abolished.[16] With it went the Court of Star Chamber, equally notorious for similar abuses. Inevitably, though lat-

er, the privilege was extended to the civil and the criminal courts. Its development has brought us far from the day when a judge could say, with authority, "Confess, Mr. Lilburn, and give glory to God." The story is too long, and has been told too well by others, for repetition here.[17] But the privilege was full grown in England, and had reached an almost indigenous maturity here,[18] when the Fifth Amendment became the law of the land.

■ The protection was not intended to be illusory. It would be so, if confined to the actual trial. In practical effect, especially for persons unable to retain counsel, this would make it a nullity. The privilege would be worth little or nothing if the magistrate could force the accused on preliminary examination to speak his own conviction and this could be used against him on the final issue. No such shadow of security was purposed. For reasons to be stated, we think this is the true policy which underlies exclusion of the plea on arraignment. And in part we take this view because it accords with the language of the Amendment, "in any Criminal Case," as interpreted in Johnson v. Zerbst and Powell v. Alabama. They involved the right to counsel. But the same words apply to the privilege. The two protections are therefore, and because of their substantive affinity, coextensive in time. The period of protection includes time for adequate preparation. It extends to "every step in the proceedings against" the accused. The aid of counsel in preparation would be farcical if the case could be foreclosed by preliminary inquisition which would squeeze out conviction or prejudice by means unconstitutional if used at the trial.

■ For the same reasons the accused is entitled to have counsel at the hearing. If authority for this is needed, it is supplied by the decisions which sustain the right when the accused demands such aid at this stage.[19] Whether he must make

---

[15] 8 Wigmore § 2251; cf. § 2252, at 325 ff.

[16] Id. § 2250.

[17] Ibid.

[18] Id., at 301–4; cf. Pittman, The Colonial and Constitutional History of the Privilege Against Self-Incrimination in America (1935) 21 Va.L.Rev. 763.

[19] United States v. Bollman, C.C.D.C. 1807, 24 F.Cas. page 1189, No. 14,622, 1 Cranch C.C. 373; cf. People v. Risley,

1883, 66 How.Prac., N.Y., 67; In re Chin Loy You, D.C.Mass.1915, 223 F. 833; in accordance with the rule that the right of counsel prevails at every step in the proceedings: Lett v. Commonwealth, 1940, 284 Ky. 267, 144 S.W.2d 505; People v. Price, 1933, 262 N.Y. 410, 187 N. E. 298; (1941) 27 Iowa L.Rev. 133, 135. But cf. In re Bates, D.C.S.C.1858, 2 Fed.Cas. page 1015, No. 1,099a, citing Ex parte Bollman, 1807, 4 Cranch 75, 129,

the demand to avoid waiver goes to the question of violation.

The Wilson and Powers cases do not rule the other way. The objections, and therefore the rulings, were based solely on the rule of evidence, not on the privilege or the right to have counsel. Nor did they involve pleas of guilty, or confessions or admissions of guilt. Such of their implications as may be pertinent to this case are so on the question, not whether the privilege and the right apply, but whether they were violated.

## II
### Was the Privilege Violated?

This is the more difficult question. It is so because the more pertinent authorities are founded on the rule of evidence, not on the privilege. They have force therefore only by analogy. And unfortunately the analogies are conflicting.

On one side is the rule of the Kercheval and Heim cases. This points to exclusion of the plea. On the other is that of the Wilson and Powers cases. This indicates the opposite result. The Adelman case also supports this view. If admissions, not amounting to confessions, made at preliminary hearings without counsel or warning, are properly allowed to come in, it would seem that the same consequence should follow as to confessions or "pleas" of guilty so made. On the other hand, if pleas on arraignment are not competent, similar pleas on preliminary hearing should not be so.

The Government disputes the validity of the latter analogy. It attempts to distinguish between the plea on arraignment and the plea on the hearing. The basis asserted is the assumed factor of res judicata, affecting the former because it is withdrawn, but not the latter, since it encounters only the defendant's repudiation. We think this misconceives what, if anything, is adjudicated by the withdrawal. It has been noted that withdrawal, regarded

as an adjudication of the evidential weight of the plea, renders it at once valueless and conclusive against the defendant. The entirely different "unfair practice" reason given in the Adelman case adds further confusion.[20] The conflict in reasons signifies fault in conclusion or premise. It indicates that withdrawal does not adjudicate the weight of the plea as evidence. Nor, in fact, is this its function. That is rather to destroy the *conclusive* effect of the plea as a bar to proof of innocence. So long as it stands, neither a plea of not guilty nor evidence to support it can come in. The defendant is foreclosed from proving his innocence. It is to remove this barrier and permit him to make his proof, in spite of his plea, that withdrawal is allowed. If therefore it has any effect of res judicata, it is merely in that respect, not to determine its evidentiary value.

Apart from the supposed effect of res judicata, the plea at arraignment, considered as evidence, would have equal weight with the plea at the hearing, perhaps more.[21] And every other reason which supports exclusion of the one does so as to the other. If withdrawal destroys the probative value of one, by virtue of the defendant's repudiation rather than res judicata, his repudiation would have the same effect upon the other. If introduction of the one would unduly prejudice the defense as a matter of evidence, so would admission of the other. If the one is obtained by unfair practices making it improper to use it, so is the other, with the same consequence. In short, the pleas, considered as substantive evidence, amount to the same thing, are secured by the same methods, in essentially similar circumstances, and have practically the same probative effects. Both are made in open court during proceedings which are steps in those by which guilt or innocence eventually is established. Both are elicited by inquiry of a court. There is no more compulsion

---

2 L.Ed. 554; United States v. Bollman, C.C.D.C.1807, 24 Fed.Cas. page 1189, No. 14,622, 1 Cranch C.C. 373, 377.

[20] The plea involved in that case was made "upon arraignment before a United States Commissioner," who however had power to do no more than hold the accused for bail. The plea therefore was, in effect, one on preliminary hearing. It was held admissible. The court distinguished the Kercheval case, relied on by the defendant, on the ground that the

plea which it involved had been withdrawn. In doing so it assigned the "unfair practice" reason for withdrawal, and therefore for the exclusion. But the plea before the Commissioner, it said, did not have to be withdrawn, had not therefore been held to have been obtained by unfair practice, and was admissible "as freely as any extrajudicial confession of guilt."

[21] Cf. text circa note 23 infra.

to make the one than the other. The only compulsion in either case is simply the moral pressure which is applied when the court requires direct response to the question, "How do you plead, guilty or not guilty?" On the law applicable to voluntary or extrajudicial confessions, this would not be sufficient for exclusion.[22] Nor, on that basis, would the other reasons given.

Yet the plea on arraignment has been excluded. And the Wilson and Powers cases have reserved expressly the question as to pleas or confessions on preliminary hearing. They did so, notwithstanding they ruled that admissions not amounting to confessions should come in, as against objection based solely on the rule of evidence. The prosecution was frankly at loss to explain thé reservation. It could not do so on the basis of the court's ruling and its own view that the controlling law is that governing admission of voluntary confessions. We cannot agree that the reservation was a mere judicial lapse. There was sound basis for it, though it was not set forth explicitly in the opinions.

### A. The Plea on Arraignment

It seems obvious that the exclusion and the reservation have roots deeper than the rule of evidence. The Adelman case implicitly recognizes this in its "unfair practice" explanation. The "unfair practice" appears to be no more than the court's act in requiring the defendant to answer directly to his guilt. This suffices to exclude the plea made at arraignment, but hardly on the basis of the rule of evidence. The same intuition is implicit in one of the reasons assigned in the Kercheval and Heim cases, namely, that receiving the plea would conclude the case against the defendant and destroy the effect of the plea of not guilty and the evidence supporting it. This would be true entirely apart from any application of res judicata, that is, if the plea were admitted merely *as evidence* and with no greater effect. In that event it would be conclusive, practically speaking, in persuasive effect upon the jury, not by force of law. In fact, the weight of the plea as evidence and merely as such hardly could be great-

er or less than that of any other confession or plea, except for one thing. It acquires added verity and solemnity from the very fact that it is made formally in open court and is elicited by the court's inquiry.[23]

This fact has two important consequences which do not attach to extrajudicial confessions. One is that any question whether the confession actually was made is practically eliminated. As this case shows, the record speaks almost with finality on that question. Again, the fact the confession is made in court practically guarantees that it is not obtained by the more violent forms of force or duress which nullify the value of out-of-court confessions. Pleas therefore qualify as "the best evidence" in the category of confessions and consequently for admission, not exclusion, if they and confessions are governed by the same law for that purpose. It follows that the plea on arraignment cannot be excluded rightly on the law of voluntary confessions.

But other and stronger reasons support the exclusion. These have to do with the nature and function of the plea and the function of the court itself.

 The plea on arraignment has its proper function. It is necessary to inform the court how to proceed with the trial. Hence the court has unquestioned power to compel the defendant to plead. But the plea is not evidence. Nor is it testimonial. It is not under oath. Nor is it subject to cross-examination. When it is "not guilty," it has no effect as testimony or as evidence in behalf of the accused. If he wishes his denial to be effective as evidence, he must make it as such from the witness stand. The function of that plea is to put the Government to its proof and to preserve the right to defend. It does not go to prove that the defendant is innocent. Likewise the plea of guilty is not evidence for the Government. Mere fair play would seem to dictate this. What is more to the point, the plea is not demanded or made with intention that it be testimonial or evidentiary. It is rather a formal criminal pleading, a waiver of trial and defense, a submission without contest. It does not create, it dispenses with evidence.[24] *Too*

---

[22] Cf. notes 3 to 10, inclusive, and text supra.

[23] Cf. Wigmore § 842. See State v. Oberst, 1929, 127 Kan. 412, 273 P. 490.

[24] Even when it is accepted in lieu of

evidence, its use for purposes of sentence is guarded in familiar ways. In some cases the prosecutor still must produce proof. Cf. Forte v. United States, 1937, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.

often in minor offenses and perhaps occasionally in major ones, it is made to avoid contest and for that reason only.

■ If the plea were testimonial or evidentiary, the court would have no power to demand it. It is the court's inquiry which elicits the plea. This is not the kind of pressure which makes confessions involuntary. It is pressure nevertheless. It applies the whole judicial power. The demand forces the defendant to commit himself squarely on the issue of his guilt. It does so in the most solemn and conclusive manner. No qualified answer can be given. There is no room to hedge or dodge. Standing mute in legal effect pleads not guilty. But as evidence it would carry the danger of silence when innocence requires speech. In short, it is the action of the court itself which forces the defendant to speak and compels the making of the plea.

As we have said, the court has the right to do this. But if, having used its power to extract the plea for its proper purpose, it can go further and over the defendant's objection convert or pervert it into evidence, in substance if not in form it compels the defendant to testify in his own case. That it has no power to do. The objection is not to elicitation of the plea. It is to abuse of its function by treating it as evidence of guilt. In misconceiving this lies the prime fallacy of the Government.

The matter may be tested as follows. It would seem beyond question that in the testimonial stage of trial the court, of its own motion or at the prosecutor's instance, could not call the defendant to the witness stand and compel him to answer directly or indirectly the question, "Are you guilty or not guilty?" Regardless of the nature of the answer, the court would have no right to confront him with such an inquiry. His privilege is to be free from being compelled to testify in his own case. It is to have no pressure from judicial power to speak his own guilt or innocence. The court could not force him to speak as a witness from the box. Yet in a roundabout way this would happen if the plea could be admitted in evidence. The only, but insubstantial, difference would be that inquisition would take place before the testimonial stage, and the product would be brought into it in the guise of admitting "evidence voluntarily given." We do not think the court can use its power to elicit the plea at one stage for one purpose and then abuse it by admitting the plea as "evidence" at another and for an entirely different purpose. To do this would be the most subtle form of judicial inquisition. It would accomplish indirectly but substantially the very thing the privilege prohibits.

The objection is not merely to abuse of the function of the plea. It is to impairment of the court's integrity. Admitting the plea would array it on the prosecution's side as an agency for procuring, as well as for admitting evidence.[25] No admonition could wipe out the solemnity or verity added from being made in court and induced by the court's own inquiry. In effect the court would become, at the stage of arraignment, an aid of the prosecution. In admitting the plea it would sit in judgment on its own action in procuring it. These evils would not arise if the plea could not be used as evidence.

There is truth therefore in the paradox of reasons given in the Kercheval and Heim cases, quite apart from their ques-

R. 1120. In others the plea dispenses with proof, but must be made under such circumstances, as with the presence and advice of counsel, that it is clear the accused acted, not only with freedom from force or duress, but with informed intelligence. See Evans v. Rives, —— App. D.C. ——, 126 F.2d 633. These protections have been evolved to make sure that the plea is not made improvidently and to prevent free and easy acceptance or subtle exaction of pleas so made. If the plea cannot be accepted or effective when made without advice or warning as to constitutional rights, it would seem equally unreliable *as evidence* when obtained without these precautions and withdrawn or repudiated whether for that or any other reason. State v. Clifford, 1892, 86 Iowa 550, 53 N.W. 299; State v. Assenberg, 1926, 66 Utah 573, 244 P. 1027, 1028; Maki v. State, 1911, 18 Wyo. 481, 112 P. 334, 33 L.R.A.,N.S., 465; Adams v. State, 1907, 129 Ga. 248, 58 S.E. 822, 17 L.R.A.,N.S., 468, 12 Ann.Cas. 158.

25 8 Wigmore § 2251, at 309: "The real objection is that any system * * * which permits the prosecution to trust habitually to compulsory self-disclosure as a source of proof must itself suffer morally thereby * * * The simple and peaceful process of questioning breeds a readiness to resort to bullying and to physical force and torture. If there is a right to an answer, there soon seems to be a right to the expected answer,—that is, to a confession of guilt."

tionable application of res judicata. On the one hand, regarding the plea as evidence distorts its proper use. On the other, admission of the plea would impugn both its withdrawal and the judicial function itself. We think the true basis for the exclusion lies in the privilege and in the policy which it dictates. This is that the courts shall not play partners or favorites with the prosecution or take over or aid in performing its functions. Rather their duty is to stand impartially between the Government and the accused. They do not do this if they have and exercise power to require him to plead and then to convert his plea into evidence of guilt. The contrary view would limit the protection of the privilege to the testimonial stage of trial and bring back into earlier stages modified forms of the old abuses.

 It does not matter that the defendant might have pleaded not guilty. In other words, he does not waive the privilege by pleading guilty. That plea waives trial and production of evidence of guilt. But when it is withdrawn, it ceases to be a waiver in these respects. Nor does the withdrawal convert it into the entirely different waiver of the privilege. When the plea is made it is not intended to waive and has nothing to do with waiving immunity to giving testimony. It is one thing to waive trial. It is another to waive immunity to testifying in trial. The two are not the same, in intent or effect, and to identify them confuses consent by legal construction with consent by actual intent. Furthermore, if pleading guilty could be considered properly as waiving the privilege, it could not be regarded as continuing to have that effect after it is withdrawn. The withdawal would nullify the waiver.

Beyond the aspect of the privilege which relates directly to the defendant's protection is that which relates to the court's integrity and impartiality. The considerations heretofore stated in this respect negate the notion of waiver. That idea would clash also with the rule of the Kercheval and Heim cases. It leaves no room for waiver by making the plea. Exceptions would nullify the rule. They would do so whether it is founded on the rule of evidence or, as we think, on the privilege. The only waiver consistent with the rule on either foundation would arise from failure to object when the plea is tendered in proof.

## B. The "Plea" at Preliminary Hearing

What we have said regarding the plea at arraignment applies to the plea on preliminary hearing. We have pointed out their essential similarity, in meaning and effects as proof, in the circumstances and methods of procurement, and in the compulsion which induces them. If the hearing, as we think, performs a judicial though limited function, if it is a stage of the "proceedings against" the accused, and if the magistrate's court stands between the prosecutor and the accused as judge on the issue before it, not as inquisitor or procurer of proof on the final one of guilt, the substantial reasons which exclude the plea at arraignment also dictate exclusion of the plea at the hearing. Their foundation is the privilege. To apply it to exclude the one but not the other would be incongruous. It would give to the magistrate a power of examination denied to the trial court. It would make the latter, by its admission of the plea, party to the former's act in procuring it and furnish an incentive for this beyond the proper performance of the hearing's limited function. If pleas of guilty were made in the same case, one at the hearing, another at arraignment, and the latter were withdrawn, admission of the former would nullify the effect of excluding the latter. Only by excluding both can the full protection of the privilege be thrown around all stages of the proceeding. And only in this manner can be prevented the abuses of preliminary inquisition which had so much to do in creating the privilege.

These reasons should suffice. They outweigh the supposed reasons for distinguishing the pleas. The Adelman case based the distinction on the fact that the one is withdrawn and the other need not be withdrawn. The inference was drawn that no "unfair practice" taints the plea made at the hearing because it is not and need not be withdrawn. We have indicated sufficiently that the "unfair practice" exists in both cases, is the same in both, and is not affected by the withdrawal. We have discussed sufficiently also the misapplication of res judicata to the probative weight of the plea on arraignment. Finally, it appears to be urged that a basis for distinction arises from the difference in functions and jurisdiction of the two courts. If any distinction could arise from this, it

would furnish stronger reasons for excluding the "plea" made at the hearing.

 They grow out of the Police Court's limited jurisdiction and function. Their scope has been stated. That the hearing is a magistrate's proceeding does not deprive it of judicial quality. Neither does it invest the court with power of inquiry or freedom from constitutional restrictions greater than the trial court possesses. There are reasons additional to those which apply to the latter for keeping the magisterial power of examination within proper bounds.[26] It would be strange law which would allow a magistrate to apply a testimonial compulsion denied to the court of general jurisdiction. We need not define the power's exact limits. Obviously they should bear some reasonable relation to the court's function, both in quality and in scope. Some inquiry into probable guilt is necessary, if the decision is not to be arbitrary. But the statutory authority "to examine and commit" is not carte blanche to convict, to procure evidence for conviction, or to prosecute. There is no necessity, as there is at arraignment, for demanding categorical answer to the question "How do you plead, guilty or not guilty?" or any substantial equivalent. There is authority, both historical[27] and judicial,[28] that such a question is improper as in excess of the court's power and function. If it has any function comparable to taking the plea on arraignment, it is to inquire whether the accused will waive the hearing or demand production of evidence to justify his detention. The form of question and reply which were used in this case could be considered appropriately to mean no more than this in legal effect; in other words, could

be given a functional, not a literal, meaning.[29] So interpreted, the plea would be merely a waiver of the hearing, would have no intended meaning or value as admitting guilt, and for this reason alone should be excluded.

But the "plea" perhaps more commonly is taken to mean what it says. Otherwise it would not be tendered or received in evidence. When this is done, the trial court makes itself accessory to the magistrate's abuse of jurisdiction and of constitutional right in obtaining it. The only difference in this respect between the plea on arraignment and the plea on the hearing is that the trial court itself extracts the former, whereas it takes advantage of the magistrate's extraction of the latter. The difference is without substance.

 As at arraignment, pleading guilty at the hearing does not waive the privilege. The same reasons which negate waiver in the one case do so in the other. Apart from withdrawal and its supposed effects of res judicata, there is no substantial difference in the pleas or the effects of admitting them which would support waiver in one case and not in the other.

 The question of knowledge remains. Ordinarily it is material in waiver. Ignorance of material fact negatives waiver. In criminal cases ignorance of constitutional right has like effect in some instances.[30] Some of the grounds we have stated for excluding the plea would make it immaterial whether the accused responds with knowledge or in ignorance of constitutional rights. If the matter involves, as we think, not only the personal rights and protection of the accused, but also

---

[26] 8 Wigmore § 2251, at 308: "Under any system which permits John Doe to be forced to answer on mere suspicion of an officer of the law, or on public rumor, or on secret betrayal, two abuses have always prevailed and inevitably will prevail: first, the petty judicial officer becomes a local tyrant and misuses his discretion for political or mercenary or malicious ends; secondly, a blackmail is practised by those unscrupulous members of the community who through threats of inspiring a prosecution are able to prey upon the fears of the weak or timid." See Miller, The Preliminary Hearing (1929) 15 A.B.A.J. 414.

[27] 8 Wigmore § 2251, at 307.

[28] McNish v. State, 1903, 45 Fla. 83, 34 So. 219; Cross v. State, 1920, 142

Tenn. 510, 221 S.W. 489, 9 A.L.R. 1354; cf. State v. Clifford, 1892, 86 Iowa 550, 53 N.W. 299, 41 Am.St.Rep. 518; Adams v. State, 1907, 129 Ga. 248, 58 S.E. 822, 17 L.R.A.,N.S., 468, 12 Ann.Cas. 158.

[29] The plea might be so taken, because in fact so intended, regardless of the question's intent. In this sense the response could be regarded as a "plea" in a proper and technical sense of the term. Invested with additional meaning, as a confession or admission of substantive guilt, it could have no possible use as a "plea" at this stage, because not responsive to any demand then necessary or proper for the court to make. It has power neither to arraign nor to accept a substantive plea of guilty.

[30] Cf. notes 34–36 infra.

the court's integrity as a court, there is no room for waiver regardless of the state of knowledge with which he responds. The abuse of the court's position is in the asking of the question. It is not relieved by the character of the reply. The abuse is clear and complete when the court, whether magistrate or trial tribunal, makes the inquiry for testimonial or evidentiary purposes without warning. That the accused may happen to respond with knowledge does not denude the inquiry of its original unfairness.

 The fairer practice and, we think, the only one consistent with the court's position, would advise the accused in all cases, before permitting him to speak even as a volunteer, of his right to counsel and would warn him that he need not speak and, if he does, it is at his peril. This would assure fairness to the accused and foreclose the possibility that he might act in ignorance. It would eliminate the risk of reversal inherent in failure to give the advice or warning.[31] The cost to the court in time and energy would be small, and that to society in efficient administration of criminal justice would be less than the prevailing practice entails. On the other hand, the cost to the accused, especially when he is indigent, of the court's failure to follow the more open and certain way may be great. Finally, such a practice would be consonant, as the prevailing one is not, with the court's obligations to see that trial or hearing is fair and to discharge the affirmative duties which it owes to persons charged with crime, more particularly when they are ignorant or indigent or both.[32]

To these considerations may be added strong administrative reasons for regarding knowledge as immaterial. Some apply to confessions or admissions of guilt

not made in the form of a plea. Turning admissibility or waiver on knowledge raises the issue in many cases. Often, as in this one, it appears after the facts become hazy and disputed. As often as not it arises first on appeal or habeas corpus. Frequently it is presented on the most sketchy evidence. When this occurs the appellate court must make what in effect is a finding of fact, and in doing so must resort to doubtful inference or presumption, unless the case is to be reversed and remanded for finding on this point. This case, and others recently decided,[33] show the difficulties and the dangers of turning admissibility or waiver on knowledge, when the accused does not have counsel and the court has failed to inform or warn him concerning his rights. The rule would not be simple, easy or certain in administration. It should be so when fundamental rights of this kind are involved.

Furthermore, as we have pointed out, the rule in the Kercheval and Heim cases does not contemplate exceptions. When account is taken of the reservation in the Wilson and Powers cases, and of the close affinity of the two pleas in all respects, the same policy as to both seems required in relation to knowledge and waiver.

 But if knowledge should be material, the facts in this case dictate the same result. As with the right of counsel,[34] waiver of the privilege must be informed and intelligent. There can be no waiver if the defendants do not know their rights. The rule must be the same, we think, when the record is silent or inconclusive concerning knowledge. Basic constitutional protections, especially in criminal cases, should not be suspended by mere inferences from indifferent facts or doubtful presumptions, whether of law or of fact.[35] This has special force in relation

---

[31] Cf. note 35 infra; Evans v. Rives, — App.D.C. —, 126 F.2d 633.

[32] Comment, Duty of Judge to Inform Accused Indigent of His Rights (1941) 27 Iowa L.Rev. 133, and authorities cited.

[33] Cf. notes 34 and 36 infra.

[34] Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Powell v. Alabama, 1932, 287 U.S. 45, 53 S. Ct. 155, 79 L.Ed. 158, 84 A.L.R. 527; People v. Napthaly, 1895, 105 Cal. 641, 39 P. 29; Cutts v. State, 1907, 54 Fla. 21, 45 So. 491; State v. Moore, 1900, 61 Kan. 732, 60 P. 748; cf. Palko v. Connecticut, 1937, 302 U.S. 319, 324, 58 S. Ct. 149, 82 L.Ed. 288; Patton v. United

States, 1930, 281 U.S. 276, 308, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263; Ex parte Chin Loy You, D.C.Mass.1915, 223 F. 833; Ex parte Riggins, C.C.N.D.Ala. 1904, 134 F. 404, 418; Sheppard v. State, 1928, 165 Ga. 460, 141 S.E. 196; State v. Briggs, 1905, 58 W.Va. 291, 52 S.E. 218; Williams v. State, 1924, 163 Ark. 623, 260 S.W. 721; Grogan v. Commonwealth, 1927, 222 Ky. 484, 1 S.W.2d 779.

[35] Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461; "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not pre-

to persons without means of their own to make the guaranties effective. Here inference that the defendants knew their rights when they made the plea would be wholly speculative, if in fact the opposite one is not justified. In this respect the case differs from some late federal decisions holding that waiver of the right of counsel had been made, though others appear to sustain it in highly doubtful circumstances.[36]

The facts are that the accused were without counsel. They had none at the hearing or until arraignment more than a month later. Then counsel was assigned by the court. When counsel became available, the defendants pleaded not guilty. They have stuck to the plea through the trial and on appeal. They testified in their own defense. They denied committing the crime. They also denied that they had had a hearing on the robbery charge or had entered the plea at the hearing. The appeal has been taken in forma pauperis.

 It seems obvious the defendants were indigent and at no time had means of their own to employ counsel or conduct their defense. The circumstances warrant no inference that the defense was mere afterthought or second sight, or that counsel would have advised or conducted one he thought not meritorious. The nature of the defense and defendants' denial that they knew a hearing had been held explain the absence of specific denial that they knew their rights when the plea was made. Though the verdict technically concluded the facts denied against them, it does not overcome the fact that they could not consistently deny having knowledge when they made the pleas and also that the pleas had been made. Taking into account all these facts, we can make no certain inference or presumption that the defendants knew their rights or waived or intended to waive them when they "pleaded" guilty. Under the more recent and controlling decisions of the Supreme Court in analogous situations, we must infer or assume the contrary.

 We need not decide therefore whether, if the defendants had been represented by counsel or were shown affirmatively and without dispute to have known their rights fully, a waiver would have occurred or the "plea" could be regarded as evidence of guilt. We leave those questions for future decision. It is sufficient to rule that when, as here, the accused is without counsel and it does not appear clearly that he knows his rights and intends to waive them, the "plea" or its substantial equivalent, made without warning or advice, cannot be received in evidence against him. Any other rule would make of the hearing a trap and an inquisition, with consequences for the accused and for the judicial system not tolerable under the Constitution.

In ruling as we do, we recognize that the policy of the privilege has been debated vigorously.[37] Much has been said for and against it. So far effective proposals for abolition or other than judicial restriction have not been put forward. The debate is therefore more pertinent to the scope which the courts permissibly may give the privilege. Criticism of the privilege has grown with organized crime and evolution of a judicial system which, while imperfect, has brought us far from the Inquisition or Courts of High Commission and Star Chamber. But with these has come also specialized proficiency in detection and prosecution to off-set the loss, if any, to society in safety from criminal activities through disappearance of all but the more subtle forms of judicial inquisition. The modern division of labor in the process of administering the criminal law permits these too to go without impairing it. With world events running as they have been, there is special reason at this time for not relaxing the old personal freedoms won, as this one was, through centuries of struggle. Men now in concentration camps could speak to the val-

sume acquiescence in the loss of fundamental rights,'" citing: Aetna Ins. Co. v. Kennedy, 1937, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177; Hodges v. Easton, 1882, 106 U.S. 408, 412, 1 S.Ct. 307, 27 L.Ed. 169; Ohio Bell Telephone Co. v. Public Utilities Comm., 1937, 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093. See also Evans v. Rives, —— App. D.C. ——, 126 F.2d 633.

36 See the authorities cited and discussed in Evans v. Rives, —— App.D.C. ——, 126 F.2d 633, and compare the contrary view of that case.

37 Wigmore's summary is admirable and sufficient for reference. 8 Wigmore § 2251. See also Ladd and Gibson, The Medico-Legal Aspects of the Blood Test to Determine Intoxication (1939) 24 Iowa L.Rev. 191, 218–251.

ue of such a privilege, if it were or had been theirs. There is in it the wisdom of centuries, if not that of decades.

Large in this is a sense of fairness to the person accused, a respect for his individual integrity, in accusation or even in guilt. But larger still is the sense of the court's own part in justice and its administration. By this we mean the sense of the citizen as well as of the court itself. It cannot be partner or partisan with the prosecutor, subtly or otherwise, and retain the confidence of the accused and the public or its own self-respect. Neither can it be coddler of the criminal. In our system the accused is not such until the jury pronounces "guilty." Until then the court, whether magistrate or trier of ultimate fact, should not extract the word from him or permit its use against him for conviction when it or another court has done

so. The privilege still stands guard when so much is attempted by inquisition, however subtle, at any stage of the proceedings, preliminary or otherwise. If it is desirable that magistrates continue to have this power, it can be done constitutionally, if at all, only by giving the accused immunity to use of its results on his trial. That is what we now do.

Because what has been said disposes of the case, it is not necessary to discuss further the right of counsel or its asserted violation. We call attention however to two cases recently decided which are pertinent to this point. Glasser v. United States, 1942, 62 S.Ct. 457, 86 L.Ed. ——; Evans v. Rives, —— App.D.C. ——, 126 F.2d 633.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.